IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JANE DOE       Plaintiff | § § § | |
| VS. | § § § | CIVIL ACTION NO. 7:19-CV-00309 (JURY REQUESTED) |
| EDINBURG CONSOLIDATED INDEPENDENT SCHOOL DISTRICT       Defendant | § § § § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant EDINBURG CONSOLIDATED INDEPENDENT SCHOOL DISTRICT (hereinafter Edinburg CISD) and files this its Motion for Summary Judgment and would respectfully show unto the court the following:

## I.
## SUMMARY JUDGMENT EVIDENCE

Exhibit A:   Plaintiff's First Amended Complaint

Exhibit B:   Deposition Excerpts from Plaintiff

Exhibit C:   Police Complaint April 11, 2017

Exhibit D:   Deposition Experts from E.M.

Exhibit E:   Suspension letter to Francisco Badillo

Exhibit F:   Acknowledgement of resignation to Francisco Badillo

Exhibit G:   Defendant's relevant policies

Exhibit H:   Francisco Badillo's acknowledgement of Employee Handbook and Policies

Exhibit I:   Defendant's training acknowledgments

1

| | |
|---|---|
| Exhibit J: | Defendant's training information for staff |
| Exhibit K: | Training Video |
| Exhibit L: | Affidavit of Sylvia Ledesma |
| Exhibit M: | Business Records Affidavit Morrison (records) |
| Exhibit N: | Business Records Affidavit Morrison (video) |

## II.
## STATEMENT OF THE CASE

1. In this suit, Plaintiff alleges violations of Title IX and the Fourteenth Amendment against Defendant Edinburg CISD. The claims are the result of the inappropriate sexual relations between Defendant's former employee, Francisco Badillo, and Plaintiff. Defendant denies that is liable to Plaintiff under Title IX because no official of Defendant with authority to address the alleged discrimination and to institute corrective measures had actual knowledge of the alleged discrimination and failed to adequately respond and because at no time did Defendant act with deliberate indifference. Defendant further denies that it is liable to Plaintiff under the Fourteenth Amendment because no policy of Defendant adopted with deliberate indifference to the known or obvious fact that constitutional violations would result was the moving force behind an alleged violation of Plaintiff's constitutional rights.

## II.
## DEFENDANT IS ENTITILED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S TITLE IX CLAIM

2. The Supreme Court has held that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." Gebser v. Lago Vista Independent School District, 524 U.S. 274, 290 (1998). The Supreme Court further held that the "response must

amount to deliberate indifference to discrimination." Id. Under this actual notice standard, "the knowledge of the wrongdoer himself is not pertinent to the analysis." Id. at 291. A District's alleged failure to comply with regulations does not establish the requisite actual notice and deliberate indifference. Id. at 292.

3. The Fifth Circuit has held that "when a teacher sexually abuses a student, the student cannot recover from the school district under Title IX unless the school district actually knew that there was a substantial risk that sexual abuse would occur." Rosa H. v San Elizario Independent School District, 106 F. 3d 648, 652-653 (5th Cir. 1997). In the words used by the Fifth Circuit, "a school district has not sexually harassed a student unless it knows of a danger of harassment and chooses not to alleviate that danger." Id. at 659.

4. The Fifth Circuit stated: "Under the standard we announce today, the school district can be liable, if at all, only for the damages caused by its intentional acts of discrimination. If the conduct has ceased by the time a supervisory employee of the sort we describe here learns of it, there is no liability in a private suit for that conduct based on some personal failure to take 'proper remedial action' thereafter. Id. at 661.

5. "For a school to be liable under Title IX, its response, or lack thereof, to the harassment must be 'clearly unreasonable in light of the known circumstances.'" Sanches v. Carrollton-Farmers Branch Independent School Dist., 647 F.3d 156, 167 (5th Cir. 2011) citing Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). "That is a high bar, and neither negligence nor mere unreasonableness is enough." Sanches, 647 F.3d at 167; Davis 526 U.S. at 642.

6. Ineffective responses to harassment are not necessarily clearly unreasonable under Title IX. Sanches, 647 F.3d at 168 citing Doe ex rel. Doe v. Dallas Independent School District, 220 F.3d 380 (5th Cir.2000). The Fifth Circuit has held that "Title IX does not require flawless

3

investigations or perfect solutions." Sanches, 647 F.3d at 170; *citing* Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009)).

7. Defendant Edinburg CISD contends that Plaintiff has no evidence that any official with authority to address discrimination and to institute corrective measures on the District's behalf had actual knowledge of any sexual relationship between Plaintiff and its former employee, Francisco Badillo. Defendant would further contend that Plaintiff has no evidence that Defendant acted with deliberate indifference with regard to any response it took to any alleged discrimination or harassment.

8. Defendant's evidence conclusively establishes that no one in the District knew of the inappropriate sexual relationship between Badillo and Plaintiff until the outcry was made by Plaintiff. Plaintiff's allegations consist of Badillo making unwanted advances/comments to Plaintiff and then two sexual encounters. (Exhibit A - ¶ 10-11). With regard to the comments allegedly made by Badillo, Plaintiff testified that nobody witnessed the comments being made and the only people Plaintiff told were two of her friends. (Exhibit B – Pg. 49 Ln. 23 – Pg. 50 Ln. 3). With regard to the first sexual encounter, Plaintiff testified that the only people she told were her two friends. (Exhibit B – Pg. 77 Ln. 17-20). With regard to the second sexual encounter, Plaintiff testified that she told no one that she was going to be meeting with Badillo. (Exhibit B – Pg. 47 Ln. 17-19 ). Plaintiff again testified that she did not know of anybody at the school district who knew about the relationship between her and Badillo. (Exhibit B – Pg. 86 Ln. 6-9). Plaintiff further testified that the only time she talked to anybody from Defendant Edinburg CISD would have been the date of the outcry. (Exhibit B – Pg. 90 Ln. 6-19).

9. It is an undisputable fact, from Plaintiff's own testimony, that she never reported any of the inappropriate events between her and Badillo to anyone at Edinburg CISD until the date of the outcry. There is no evidence of anyone from the District actually knowing of the inappropriate

4

relationship between Plaintiff and Badillo until the date of the outcry. As the case authority above clearly establishes, Defendant Edinburg CISD cannot held liable under Title IX for something it did not actually know about.

10. Defendant anticipates that Plaintiff will attempt to argue that Edinburg CISD knew that a substantial risk of sexual abuse to Plaintiff would occur because of a different complaint by a different student wherein Badillo was said to have made the other student feel uncomfortable. Defendant contends the facts related to that other complaint do not constitute or support a finding that Defendant had actual knowledge that there was a substantial risk that Badillo would sexually abuse Plaintiff.

11. The other student at issue (E.M.) filed a complaint with the Edinburg CISD police department and the incident was investigated by the police department. (Exhibit C). E.M. indicated in a sworn affidavit that Badillo had been looking for her for a couple days and then pulled her out of a class to speak to her. (Exhibit C – pg. 6). E.M. indicated in her affidavit that Badillo said he saw something about her on Snapchat and that she had nothing to be ashamed about because she looked nice. (Exhibit C – pg. 6). E.M. advised the officer in her affidavit that Badillo expressed concern, told her to be careful, and then she went back to class. (Exhibit C – pg. 6). E.M. also indicated that Badillo never told her what he saw on Snapchat. (Exhibit C – pg. 6).

12. Badillo provided a sworn affidavit with regard to the student's complaint. (Exhibit C – pg. 5). Badillo indicated that on a robotics trip to San Antonio he overheard some students speaking about a classmate regarding some inappropriate behavior on social media. (Exhibit C – pg. 5). Badillo indicated that he was concerned and he approached that student to express his concern. (Exhibit C – pg. 5). Badillo further disclosed that he told the student that she needed to be careful (as was also disclosed by E.M. in her affidavit), protect her character, and told her that nothing was private on social media. (Exhibit C – pg. 5).

13. The police investigation of this complaint shows that Edinburg CISD Police Officer Anzaldua and Assistant Principal Culbertson addressed the issue with Principal Ledesma and it was determined that Assistant Principal Lumbreras would address this matter with Badillo. (Exhibit C – pg. 4). Assistant Principal Lumbreras and Officer Anzaldua met with Badillo and Badillo was told that he was to advise an administrator before approaching any student. (Exhibit C – pg. 4). This is the extent of all information known to the school regarding the complaint of E.M. There was no complaint of improper touching, solicitation, or sexual comments of any kind.

14. E.M. provided deposition testimony and stated that she was sure the school talked to Badillo because after that he would never look at her in the hallway and it was like she did not exist. (Exhibit D – Pg. 35 Ln. 8-16). E.M. confirmed in her deposition testimony that after the event, she never spoke to Badillo, he never solicited a relationship with her, he never contacted her, and that she never complained about him again. (Exhibit D – Pg. 37 Ln. 8 to Pg. 38 Ln. 7). E.M. also testified that she never posted any nude photos of herself on Snapchat. (Exhibit D – Pg. 29 Ln. 15 to Pg. 31 Ln. 7).

15. Defendant contends that the facts above fall well short of the facts in Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998) where the U.S. Supreme Court found the Gebser facts were inadequate to raise a genuine issue on whether the District had notice of the sexual relationship with a student.

16. A summary of the Gebser facts at Gebser v. Lago Vista Independent School District, 524 U.S. 274, 278-79 (1998) are as follows:

> In the Spring of 1991, Alida Star Gebser was an eighth-grade student at a middle school in respondent Lago Vista Independent School District (Lago Vista), who joined a high school book discussion group led by Frank Waldrop, a teacher at Lago Vista's high school. During the book discussion sessions, Waldrop often made sexually suggestive comments to the students. Gebser entered high school in the fall and was assigned to classes taught by Waldrop in both semesters. Waldrop continued to make inappropriate remarks to the students, and he began to direct more of his suggestive comments toward

6

Gebser, including during the substantial amount of time that the two were alone in his classroom. He initiated sexual contact with Gebser in the spring, when, while visiting her home ostensibly to give her a book, he kissed and fondled her. The two had sexual intercourse on a number of occasions during the remainder of the school year. Their relationship continued through the summer and into the following school year, and they often had intercourse during class time, although never on school property. Gebser did not report the relationship to school officials, testifying that while she realized Waldrop's conduct was improper, she was uncertain how to react and she wanted to continue having him as a teacher. In October 1992, the parents of two other students complained to the high school principal about Waldrop's comments in class. The principal arranged a meeting, at which, according to the principal, Waldrop indicated that he did not believe he had made offensive remarks but apologized to the parents and said it would not happen again. The principal also advised Waldrop to be careful about his classroom comments and told the school guidance counselor about the meeting, but he did not report the parents' complaint to Lago Vista's superintendent, who was the district's Title IX coordinator. A couple of months later, in January 1993, a police officer discovered Waldrop and Gebser engaging in sexual intercourse and arrested Waldrop. Lago Vista terminated his employment, and subsequently, the Texas Education Agency revoked his teaching license.

17. The U.S. Supreme Court in <u>Gebser</u> determined that the parents' complaint to the principal concerning Waldrop's comments in class was the only complaint Lago Vista had received about Waldrop, and that even though the evidence involved sexually suggestive comments, the evidence was inadequate to raise a genuine issue on whether the school district had actual or constructive notice that Waldrop was involved in a sexual relationship with a student. <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274, 279, 118 S. Ct. 1989, 1994, 141 L. Ed. 2d 277 (1998).

18. With regard to the report by E.M., where Badillo made E.M. feel uncomfortable by approaching her and expressing concern about what the student allegedly posted on social media, those facts do not rise to the level of establishing that Edinburg CISD knew that there was a substantial risk that the sexual abuse of Plaintiff would occur as required by <u>Gebser</u>. As discussed above, the Edinburg CISD police department investigated the student's complaint and the complaint was addressed and resolved as shown by the student's own testimony. In <u>Gebser</u> there were actual sexually suggestive comments being made to the students which was clearly reported to the school principal. Here, Defendant's first notice of an inappropriate sexual relationship

7

involving Badillo was the outcry by Plaintiff on May 25, 2017 and on that same day Defendant Edinburg CISD suspended Badillo pursuant to Edinburg CISD policy and instructed him that he was not allowed onto school properties or to have any contact with any personnel or students. (Exhibit A - ¶ 17 and Exhibit E).

19. There is simply no evidence that Edinburg CISD actually knew that there was a substantial risk that sexual abuse would occur. Because Plaintiff cannot establish that an official who at a minimum had authority to address any alleged discrimination and to institute corrective measures on the Defendant's behalf had actual knowledge of any discrimination regarding Plaintiff, Plaintiff's Title IX cause of action must fail. Additionally, Defendant's evidence conclusively establishes that once an outcry was made to Defendant's employees, whether in the case of Plaintiff Jane Doe or in the complaint by E.M., Defendant Edinburg CISD took prompt action to investigate and address the issues and in no way acted with deliberate indifference. Because Plaintiff cannot establish that Defendant acted with deliberate indifference once complaints were made known to Defendant, Plaintiff's Title IX cause of action must fail. Accordingly, Defendant requests that the Court dismiss Plaintiff's Title IX cause of action.

## II.
## DEFENDANT IS ENTITILED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM

**A.     Introduction to Argument**

20.     "A municipality cannot be held liable under § 1983 on a theory of respondeat superior liability. To establish municipal liability pursuant to § 1983, a plaintiff must demonstrate three elements: 'a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.' An official policy must be either unconstitutional or have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.' 'Deliberate indifference is a degree of culpability beyond mere negligence

8

or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight.' 'These requirements must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.' " <u>Shumpert v. City of Tupelo</u>, 905 F.3d 310, 316-17 (5th Cir. 2018).

21. Plaintiff has a constitutional right to her bodily integrity. However, Defendant contends that Plaintiff has no evidence that Defendant Edinburg CISD has a policy which was the moving force behind the alleged Fourteenth Amendment violation. Clearly, Plaintiff is not arguing that Edinburg CISD has a policy that allows for its employees to have inappropriate sexual relationships with its students. It is undeniable that Defendant has no policy that would allow for the abuse of its students. What Plaintiff has alleged is that Defendant violated Plaintiff's Fourteenth Amendment by "failing to investigate Francisco Coronado Badillo's misconduct; failing to appropriately discipline Badillo; failing to adequately train and supervise Badillo; and manifesting deliberate indifference to the sexual assault and ongoing harassment of Plaintiff by one of its teachers." (Exhibit A - ¶ 23).

**B.** **<u>Plaintiff Has No Evidence of Deliberate Indifference With Regard to Investigation or Discipline by Defendant</u>**

22. With regard to an investigation and discipline, as established above by way of Plaintiff's own testimony, nobody from the District knew of the improper sexual relationship between Plaintiff and Badillo. On the May 25, 2017 outcry date, the matter was immediately investigated and addressed and Badillo was suspended that same day. (Exhibit E). Badillo was not allowed onto school properties or to have any contact with any personnel or students. (Exhibit E). The next day, on May 26, 2017, Badillo resigned from employment with Defendant. (Exhibit F) The evidence establishes that an investigation was initiated the same day as the outcry and discipline

9

was enforced immediately thereafter in the form of a suspension. Defendant contends it actions were appropriate and could in no way be defined as constituting deliberate indifference.

23. Non-party student E.M.'s complaint was undeniably investigated and addressed by the Edinburg CISD Police Department. (Exhibit C). That complaint was also dealt with in a manner that cannot be described as being deliberately indifferent as evidenced by the fact that E.M. provided deposition testimony confirming the investigation took place and there were no additional issues between Badillo and E.M. (Exhibit D – Pg. 35 Ln. 8-16). E.M. testified that after the event she complained about, she never spoke to Badillo, he never solicited a relationship with her, he never contacted her, and she never had to complain about him again. (Exhibit D – Pg. 37 Ln. 8 to Pg. 38 Ln. 7). Defendant contends that investigation and its outcome were appropriate and in no way constituted deliberate indifference. *See* Shumpert, 905 F.3d at 316.

24. The Fifth Circuit case of Gonzalez v. Ysleta Independent School Dist., 996 F.2d 745 (1993) provides very specific guidance on the issue of deliberate indifference and how such standard applies to the Plaintiff's claims against the Edinburg CISD. A discussion of the evidentiary support and factual record reviewed by the Fifth Circuit in Gonzalez is not only relevant, but it is also directly applicable to this case.

25. Gonzalez involved a section 1983 claim brought against a school district by student Jessica Gonzalez who was sexually molested by her first grade teacher (Mares) in 1987. In 1981, Mares' school principal (Morales) received a complaint from a parent that Mares was frequently allowing girls to sit on his lap during class. After consulting with Assistant Superintendent Resendez, the Principal issued an informal memorandum and oral reprimand to Mares. One month later, the principal received a second more serious complaint from a different parent who stated that Mares placed his hand around the waist of a female student. The child and Mares verified the incident and the school issued a second oral reprimand and a direction to enter a general "improvement"

10

program.  In 1985, Principal Morales received an urgent phone call from student Leticia Pena's mother after Leticia reported that Mares placed his hand on her waist and his tongue in her ear. Mares admitted to Principal Morales that he placed his hand on Leticia's waist but denied any other contact.  The District's Director of Employee Relations (DeMore) and Principal Morales then met with Leticia who confirmed that Mares wrapped his arm around her waist and stuck his tongue in her ear.  Morales believed Leticia was telling the truth and considered the conduct to be actionable sexual abuse.  Asserting that Leticia's parents did not want to proceed further with the investigation, school officials decided to drop the matter and merely include the incident as a part of Mares' evaluation. Gonzalez, 996 F2d at 747-748.

26.	After learning that Mares was subsequently elected as PTA president, the Penas (Leticia's parents) made known that they were never in favor of terminating the investigation into Mares and believed he was going to be reprimanded, transferred, and monitored.  Mr. Pena was actually elected to the Board of Trustees and called an emergency meeting of the Board where he submitted documentation to them detailing Mares' assault on his daughter and the administration's attempt to "cover up" what happened.  Deputy Superintendent Jerry Barber was assigned to investigate and report to the Board.  Barber concluded that the school officials should be reprimanded for failing to "follow through" in their investigation but that the "testimony of a little girl" was not enough to pursue termination proceedings against Mares in face of his adamant denial.  A recommendation was made to the Board of Trustees and they voted to transfer Mares to another school.  Id. at 748-749

27.	On March 9, 1987, Mares molested Plaintiff Jessica Gonzalez by leaning over her, placing his hand inside her underwear and touching her vagina.  Mares was suspended with pay, eventually convicted on charges of indecency with a child, and fired by the Board in August of 1987.  The Gonzalezes filed suit alleging that their daughter's injuries were attributable to the school district's

policies and customs regarding sexual abuse. The jury ruled in favor of the Gonzalez' and the District appealed to the Fifth Circuit Court of Appeals. Id. at 749-750.

28.     In addressing the issue of whether or not the facts of that case would support a finding of deliberate indifference on the part of the School District, the Fifth Circuit held the following:

> "It is of course true that Mares would not have had the opportunity to assault Jessica had the Board removed him from the classroom after it learned of Leticia Peña's allegation in 1985. We also agree, and YISD appears to concede, that the Board's choice to transfer Mares rather than impose a more severe sanction was not only negligent but also inconsistent with the district's handling of other cases of suspected sexual abuse. But these facts, by themselves, are not sufficient to establish that the Board was deliberately indifferent to the welfare of students in making its decision….These allegations, while certainly a cause for concern, did not compare in gravity to Mares' conduct in 1987, and thus provided no grounds for suspecting that he might be capable of such a vile act. Moreover, the deputy superintendent, on whose factual findings the Board was surely entitled to rely, stated that he had virtually no proof that Mares touched Leticia Peña in the manner she initially reported. To hold that these facts support a finding that the Board was "deliberately indifferent" would drain the term of its meaning. While sympathy for Jessica and her parents and anger toward those whose acts contributed to this tragic occurrence are understandable, our precedents do not permit us to hold the school district responsible for this harm." Id. at 762.

In our case with Jane Doe and the Edinburg CISD, the prior complaint of E.M. (as discussed above) made no reference to any sexual contact (or contact of any sort for that matter), no sexual comments, and no solicitation. E.M.'s complaint was investigated by a licensed police officer and the matter was addressed (not ignored) by school district representatives. The District's response to Plaintiff's outcry can in no way be described as deliberately indifferent conduct. Based on legal precedent as explained in Gonzalez, there is no evidence that the Edinburg CISD was deliberately indifferent to the welfare of its students and Plaintiff's Fourteenth Amendment Claim should be dismissed as a matter of law.

**C.     Plaintiff Cannot Establish That Defendant Was Deliberately Indifferent Regarding Its Training And Supervision**

29.     Defendant contends that Plaintiff's argument that Defendant failed to adequately train/supervise does not meet the requirements of a Fourteenth Amendment claim. The allegation that training/supervision was not adequate as alleged by Plaintiff is argued more as a claim of negligence rather than the much higher standard of deliberate indifference. The United States Supreme Court has held that alleged negligent deprivations of constitutional rights do not create liability under § 1983. <u>Daniels v. Williams</u>, 474 U.S. 327, 330–31 (1986). To establish a constitutional violation based on a failure to train theory, a Plaintiff must show that: "(1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing a violation of plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." <u>Shumpert v. City of Tupelo</u>, 905 F.3d 310, 317 (5th Cir. 2018). That said, Defendant's summary judgment evidence establishes that it had numerous policies in effect during the time period in question that helped ensure the District's intent to protect both its students and it employees. (Exhibit G). Some of those policies include, but are not limited to, the following:

- Texas Educator's Code of Ethics
- The educator shall not intentionally, knowingly or recklessly treat a student or minor in a manner that adversely affects or endangers the learning, physical health, mental health, or safety of student or minor.
- The educator shall not intentionally, knowingly, or recklessly engage in physical mistreatment, neglect, or abuse of a student or minor.
- The educator shall not solicit or engage in sexual conduct or a romantic relationship with a student or minor.

- The educator shall maintain appropriate professional educator-student relationships and boundaries based on a reasonably prudent educator standard.

- The educator shall refrain from inappropriate communication with a student or minor…

- Sexual and other harassment of students by employees are forms of discrimination and are prohibited by law. Romantic or inappropriate social relationships between students and district employees are prohibited.

- All employees are required by state law to report any suspected child abuse or neglect to a law enforcement agency, Child Protective Services, or appropriate state agency within 48 hours…

- The district has established a plan for addressing child sexual abuse, which may be accessed at Policy FFH Legal/Local.  (See Exhibit G)

30. With respect to the training of its employees, Badillo received a copy of the Employee Handbook with the above noted District policies, as well as all other District policies, as is evidenced by him signing the Employee Handbook Acknowledgement Form. (Exhibit H). Badillo had also been trained on the numerous District policies, including those on child abuse/neglect and preventing sexual harassment, as evidenced by the training sign-in sheets and Acknowledgement of Training forms signed by Badillo. (Exhibit I). As a part of its additional training of its staff, the District provided instruction by video specifically related to the inappropriateness of student/teacher relationships. (Exhibit J – slides from video). The actual complete video in two parts is attached as Exhibit K and includes re-enacted examples/scenarios of types of harassment that are improper and prohibited by the District. In addition, Defendant provided Plaintiff's school with four licensed police officers and two security guards that were employed by the Edinburg Consolidated Independent School District and were assigned to Plaintiff's High School at all times

for the safety and protection of the students and staff, including Plaintiff. (See Exhibit L). Any allegation that Defendant was deliberately indifferent regarding its training and supervision as that standard is defined by the Fifth Circuit, is entirely inconsistent with the evidence in this case.

**D.      Summary and Conclusion of Argument in Fourteenth Amendment Claim**

31.     Plaintiff has no evidence of an unconstitutional policy that was the moving force for any alleged violation of constitutional rights and there is also no evidence that Defendant Edinburg CISD acted with deliberate indifference. To the contrary, Defendant's evidence establishes that Defendant has policies in place, as well as trainings on those policies, to protect the rights of both students and employees. Defendant also provided police officers and security guards to Plaintiff's high school campus for the protection and safety of its students and staff. Because Plaintiff cannot satisfy the requirements for municipal liability, Plaintiff's Fourteenth Amendment claim must fail. Shumpert v. City of Tupelo, 905 F.3d at 316-17; Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (*citing* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Accordingly, Defendant requests that the Court dismiss Plaintiff's Fourteenth Amendment cause of action.

## III.
## PUNITIVE DAMAGES ARE NOT RECOVERABLE UNDER TITLE IX

32.     In deciding whether punitive damages were available under the ADA and Section 504 of the Rehabilitation Act, the United States Supreme Court analyzed both Title IX and Title VI stating that Title IX stems from contract law and that punitive damages are not recoverable under contract law. *See* Barnes v. Gorman, 536 U.S. 181, 187, 122 S. Ct. 2097, 2101, 153 L. Ed. 2d 230 (2002). While Barnes is not a Title IX case, the same U.S. Supreme Court analysis concluding there are no punitive damages available under Title VI should extend to Title IX claims. Accordingly, Defendant contends Plaintiff is not entitled to punitive damages under the Title IX claim and any such claim should be dismissed.

## IV.

## **PUNITIVE DAMAGES ARE NOT RECOVERABLE UNDER SECTION 1983**

33. Plaintiff brings her Fourteenth Amendment cause of action against Defendant Edinburg CISD pursuant to Section 1983. As a school district, it is undisputed that Defendant Edinburg CISD is a governmental entity. (Exhibit A - ¶ 4). The United States Supreme Court has found "that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Accordingly, Defendant contends Plaintiff is not entitled to punitive damages under the Fourteenth Amendment claim and any such claim should be dismissed.

34. WHEREFORE, PREMISES CONSIDERED, Defendant EDINBURG CONSOLIDATED INDEPENDENT SCHOOL DISTRICT prays that Plaintiff takes nothing from this suit, that its Motion for Summary Judgment be granted, that it recovers its court costs and attorney's fees associated with prosecuting this matter, and that the court grant it such other and further relief to which it may be entitled to, either at law or in equity.

Signed on October 30, 2020.

Respectfully submitted,

**ESPARZA & GARZA, L.L.P.**
964 E. Los Ebanos Blvd.
Brownsville, Texas 78520
Telephone:   (956) 547-7775
Facsimile:    (956) 547-7773

By: /s/ Eduardo G Garza
Eduardo G Garza
State Bar No. 00796609
USDC Adm. No. 20916
Roman "Dino" Esparza
State Bar No.  00795337
USDC Adm. No. 22703
**ATTORNEYS FOR DEFENDANT
EDINBURG CISD**

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2020, pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the above and foregoing document was served on each party to this action by Defendant's submission of this document to the U.S. District Court electronically to the DCECF system.

/s/ Eduardo G Garza
Eduardo G Garza

## **CERTIFICATE OF CONFERENCE**

As this pleading involves a dispositive motion, there is no requirement for conference with respect to this motion.

/s/ Eduardo G Garza
Eduardo G Garza
