United States Courts
Southern District of Texas
FILED

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

*November 19, 2020*

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| JANE DOE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CA NO. 7:19-CV-00309 |
| | § | |
| | § | |
| | § | |
| EDINBURG CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT EDINBURG CONSOLIDATED**
**INDEPENDENT SCHOOL DISTRICT'S MOTION FOR SUMMARY**
**JUDGMENT**

**TO THE HONORABLE COURT:**

Defendant Edinburg Consolidated Independent School District's ("ECISD" or "District"

or "School") Motion for Summary Judgment should be denied for at least the following reasons:

- **Jane Doe, a then sixteen-year-old student, was sexually assaulted, including suffering a penetrating injury to her anus, and sexually harassed, on multiple occasions.**

- **ECISD employee and teacher, Francisco Coronado Badillo, plead guilty to Sexual Assault of a Child and Improper Relationship Between Educator-Student, Second Degree Felonies, and received four (4) years in jail. Badillo was allowed to be alone with Jane Doe for extended periods of time during the day; he could go where he wanted, when he wanted, and could return when he pleased.**

- **ECISD had actual notice of harassment and assault in its programs and was deliberately indifferent to that harassment and assault.**

- **At ECISD, a teacher could remove a child from the classroom, and, at his whim, keep the child as long as he wanted, and take the child wherever he wanted. According to one of Jane Doe's teachers, Badillo was removing Jane Doe from the classroom so frequently that it was "becoming a habit." Doe was also removed on occasion without even her teacher requesting such action. Importantly, there was absolutely no**

1

**paperwork required for Badillo to remove a child from the classroom, so no one can be certain how many times such "removals" occurred.**

- **ECISD had no policy prohibiting a teacher like Badillo from being alone with a child, nor was there a policy restricting where Badillo could take the child, or when he should return; there simply was no accountability whatsoever.**

- **ECISD has received multiple complaints previously regarding sexual assault and sexual harassment by a teacher of a student, including a prior complaint by a minor female student against Badillo for removing her from her class, getting her alone and asking about her nude photographs, saying she "looked nice" and that she had "nothing to be ashamed about"; ECISD officials have also been sued previously for the sexual assault of a minor by his teacher. Despite the prior suit and prior complaints, ECISD failed to put policies in place. ECISD was thus deliberately indifferent to the rights of Jane Doe.**

- **ECISD had no policy in place at the time of the assaults and harassment requiring a system to track the whereabouts of students while at school. ECISD had no policy preventing a teacher from being left alone with a child for extended periods of time. ECISD was thus deliberately indifferent to the rights of Jane Doe. After Jane Doe's assault and outcry, ECISD now has one written policy.**

- **Defendant seeks dismissal on the eve of mediation. The parties are scheduled for mediation in this matter on December 3, 2020.**

## I.
## INTRODUCTION

Defendant's Motion is meritless and should be denied.

Defendant Edinburg CISD had actual knowledge of Jane Doe's harassment or at least knew there was a substantial risk that sexual abuse would occur by Badillo and Defendant was deliberately indifferent to that harassment. Once the School had notice of previous reports of Badillo's inappropriate behavior prior to Jane Doe's assault, Edinburg CISD should have fired Badillo on the spot. However, Edinburg CISD did not, allowing him to remain on campus to prey on Jane Doe. Additionally, no one at the school knew how long Mr. Badillo and the child were alone; no one was certain where Mr. Badillo and the child were located during their time alone. What was clear, however, was that ECISD had no policy preventing such conduct. Plaintiff's

counsel questioned the former assistant principals and the former principal repeatedly about the lack of a policy requiring strict accountability of the whereabouts of minor students while attending school, and the lack of policy prohibiting children from being left alone, unsupervised, for long periods of time with teachers or staff of any sort. These witnesses testified that there should have been policies in place such as the ones described above. Even after a similar incident occurred just days before Plaintiff's sexual assault where Mr. Badillo pulled a minor student out of class and several incidents of teacher misconduct had occurred previously at ECISD schools, Defendant ECISD made no policy changes whatsoever following these incidents.[1]

Defendant's policies that existed at the time of Jane Doe's assaults demonstrate deliberate indifference to the safety and rights of children, who are the most vulnerable and the most sought out by sexual predators. ECISD had no policy prohibiting teachers like Badillo from being able to remove a child from class, and from taking that child to be alone for long periods of time, wherever Badillo chose to go. Further, ECISD had no policy prohibiting teachers like Badillo from taking a student from the classroom with no required destination; in other words, when Badillo would take Doe or another child out of the classroom to "work on a project", she might return in ten minutes, she might return in thirty minutes, or, never return to class at all. Despite the known risk, which was made crystal clear in previous incidents, the failure to adopt adequate policies by ECISD created an environment ripe for a predator like Badillo to assault a helpless child.

In the period before the assaults, Badillo removed Jane Doe from the classroom multiple times. During this same time period, Jane Doe's behavior took a turn for the worse. Something was terribly wrong at ECSID that allowed a child predator like Badillo to take a child from the classroom and have his way with Jane Doe. Plaintiff filed this lawsuit to force change at the school,

---

[1] ECISD has now, finally, changed one policy. There is a written policy prohibiting teachers from being left alone with students unsupervised. This change came too late for Jane Doe.

and obtain justice. Plaintiff respectfully asks this Court to deny Defendant ECISD's Motion for Summary Judgment.

## II.
## MATERIAL FACTS

Jane Doe was a happy and hardworking sixteen-year-old girl. Prior to the assaults and rape, Jane Doe loved school and loved sports. She loved all the things that other girls of the same age enjoy. Jane Doe began taking classes from Badillo at Edinburg CISD's Robert Vela High School ("Robert Vela") in the Spring of 2017. Francisco Badillo is a man in his mid-30s who was employed as a Career and Technical Education Teacher at Robert Vela. Badillo had a criminal history but nevertheless Edinburg CISD hired Badillo as a teacher.

The unwanted advances began with Badillo making a comment to Jane Doe stating she looked "hot" in an outfit she wore to school one day.[2] Soon afterwards Badillo began pulling Jane Doe out of her classes with regularity.[3] At the time of Badillo's first sexual advance, he pulled Jane Doe out of her fourth period class, to ask if she had sexual fantasies about him.[4] He later had Jane Doe meet him at his wife's classroom during her fifth period, where he proceeded to forcibly kiss her and sexually assault her.[5] He lifted up her dress and forcefully inserted his penis into Plaintiff's anus.[6] Plaintiff froze.[7] There is video surveillance footage of Badillo escorting Plaintiff into the classrooms.

Jane Doe was terrified and traumatized during every encounter.[8] She repeatedly told Badillo she was uncomfortable and did not want to have sex.[9] Her superior, someone she trusted

---

[2] *See* Exhibit B, Jane Doe Dep. 49: 13-18.
[3] *Id.* at 52: 1-14.
[4] *Id.* at 53: 22-23.
[5] *Id.* at 53: 22-54: 4.
[6] *Id.* at 74: 12-77:1.
[7] *Id.*
[8] *Id.*
[9] *Id.*

completely, continued to pull her out of class and force himself upon her. Her grades had started to suffer by this point.[10] On a separate and later occasion, Badillo pulled Plaintiff out of her eighth period class to make plans to meet after school, and told her to meet him outside the school where he would pick her up.[11] ***Jane Doe never returned to her 8th period class and no one at the School asked why she did not return***.[12] On this occasion, Badillo picked up Plaintiff in his truck and drove the two of them over to his sister's house.[13] While at his sister's house, Badillo consumed alcohol before bringing Plaintiff into one of the bedrooms, where he got on top of her and proceeded to rape her.[14] Badillo told Jane Doe that he would not let her leave until he made her "cum".[15] Jane Doe felt that if she did not accompany Badillo to his sister's house that it would affect her grades and Badillo would bully her.[16] On this particular occasion, no one at the school ensured that Jane Doe had been picked up by a parent or accounted for her whereabouts.[17]

Upon information from various witnesses, Badillo had a known history of partying with students, supplying students with drugs and there was even an allegation that he had impregnated a student at Robert Vela High School several years prior.[18] Additionally, Badillo was known to regularly make sexual and racial jokes in the classroom setting.[19]

A student of Robert Vela reported Badillo's misconduct on April 11, 2017 to the school administration, but the School failed to take any action, allowing Badillo to continue to abuse other students.[20] Badillo clearly had a history of acting inappropriately from giving students leeway in

---

[10] *Id.* at 43: 15-18.
[11] *Id.* at 33:8-34:4.
[12] *Id.* at 110: 18-111:1.
[13] *Id.* at 48: 7-19.
[14] *Id.* at 79: 24-81:4.
[15] *Id.*
[16] *Id.* at 45: 20-24.
[17] *Id.* at 110: 18-111:1.
[18] *Id.* at 88: 20-24; 91: 4-8; 87: 21-24.
[19] *Id.* at 91: 21-92:3.
[20] *See* Exhibit L, Information Report.

class, to inappropriate and offensive remarks, unwanted physical contact and sexual intercourse with minor students.

On May 24, 2017, Badillo again pulled Jane Doe out of her class where she had a substitute teacher to finish a "project" and she did not return for the rest of the class period.[21] On May 25, 2017, Badillo again pulled Jane Doe out of class even though the teacher at first refused but Badillo kept persisting.[22] He took Jane Doe to his wife's classroom but it was locked so he asked a janitor to unlock the classroom.[23] When they entered the classroom, Badillo asked Jane Doe if she wanted to go to the back room, referring to sexual activities.[24] Badillo kept insisting, saying "Oh can we please do this and go to the back room."[25] Badillo also kissed Jane Doe before she tried to leave.[26] Jane Doe refused his further advances and eventually returned to her class.[27] Alyssa Ramirez, Jane Doe's teacher, stated that Jane Doe appeared nervous and stressed after she returned to her class.[28] Her friend G.M., was trying to calm her down.[29] And yet the teacher *still* did not think to investigate it. On that same day, a student reported to the Edinburg CISD police that Badillo was taking Jane Doe out of class and into another classroom.[30] A campus police officer was on duty at the high school and was summoned to the front office of the school to make contact with Jane Doe in reference to an urgent matter.[31] In the presence of the officer and the Assistant Principal, Jane Doe made an official outcry stating that she had sexual relations with a teacher she identified as

---

[21] *See* Exhibit R, Affidavit of Alyssa Ramirez.
[22] *Id.*
[23] *See* Jane Doe Dep. 61: 13-62: 2.
[24] *Id.* at 63: 12-21.
[25] *Id.*
[26] *Id.* at 63: 2-5.
[27] *Id.* at 62: 22-63:1.
[28] *See* Exhibit R.
[29] *Id.*
[30] *See* Jane Doe Dep. 85: 17-25.
[31] *Id.;* 90: 11-12; 79: 1-14.

Francisco Badillo III.[32] According to Jane Doe, the school advised Badillo to resign and said that he could transfer to another school once the investigation was complete.[33] The school also told Plaintiff that these events should not have happened and that the school should have kept a closer watch on Badillo.[34]

**Badillo Plead Guilty.**

Francisco Badillo plead guilty to the charges of Sexual Assault of a Child and Improper Relationship Between Educator-Student, Second Degree Felonies, and received four (4) years imprisonment at the Institutional Division of the Texas Department of Criminal Justice.[35] He is currently serving time.[36] Once Badillo is released from prison, he will have to register as a sex offender for the rest of his life and can no longer work around children.[37]

**Jane Doe Suffered Harassment and Bullying from Her Own Mother and Defendant Edinburg CISD has Failed to Provide Her Any Counseling or Other Support.**

After Jane Doe made her outcry to the School, she began to experience severe harassment and bullying from her own mother, the most heartbreaking disclosure of all. The incident caused Jane Doe to leave Robert Vela High School and move out of the Valley entirely to Houston to finish her junior and senior year at Houston Academy of International Studies.[38] There is no evidence that Edinburg CISD provided Jane Doe with any counseling or support. In fact, Edinburg CISD threw salt on the wound by framing the sexual assault by Badillo to Jane Doe's mother as Jane Doe "having a relationship with [Badillo]," according to Jane Doe's testimony.[39] Although the school knew very well that Jane Doe was a minor and could not consent to a relationship. The

---

[32] *Id.*
[33] *Id.* at 86: 9-25.
[34] *Id.* at 110: 2-7.
[35] *See* Exhibit A, Judgment of Conviction.
[36] *Id.*
[37] *Id.*
[38] *See* Exhibit B, Deposition of Jane Doe 12:20-13:2.
[39] *Id.* at 97: 16-21; 105: 18-25.

School still cannot to this day bring itself to call what happened to Jane Doe for what it is - **rape**. After the School notified the mother of the incident, Jane Doe's mother became very upset at Jane Doe and started to call Jane Doe names and hit her.[40] Jane Doe's mother told Jane Doe that the reason she was reacting this way was because the School told her that it was a "relationship".[41] From that point on, Jane Doe's mother told Jane Doe that she was "disgusting" and that she "wasn't going to be anything else but one of those names and nobody is going to want [her] and that it was [her] fault and that [she] should have been stronger."[42]

There is no evidence that anyone at Edinburg CISD reached out to Jane Doe after the incident to provide any resources.

### Jane Doe Suffers from Mental Anguish

Jane Doe testified that as a result of the sexual abuse by Mr. Badillo, she is suffering from symptoms of mental anguish including but not limited to:

- Difficulty coping with certain situations[43];

- Social withdrawal[44];

- Self-harm[45];

- Intrusive thoughts of the abuse[46];

- Outbursts of anger[47];

- Losing a grip on life[48]; and

- Suicidal thoughts[49].

---

[40] *Id.* at 97: 23.
[41] *Id.* at 98: 14-20.
[42] *Id.* at 98: 21-99:2.
[43] *Id.* at 100: 18-101:1.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.* at 101: 5-7.
[49] *Id.* at 109: 7-23.

Jane Doe testified that if she would "get angry" she would start to "punch [herself] on the legs" until she "can't really feel them anymore or until [her] hand is too bruised to punch anymore."[50] She will be "bruised for about two weeks straight until the bruises start going away."[51] Jane Doe additionally testified that she experienced difficulties in intimacy with her boyfriend because she felt as though she was being raped all over again.[52] She would begin to cry during sex.[53]

In the evaluations conducted after the sexual assault by The Children's Assessment Center Therapy and Psychological Services, Jane Doe expressed feeling "withdrawn and sad about the situation."[54] She expressed feeling "like a ghost of myself", "I don't feel happy," and "I feel depressed".[55] Jane Doe testified she feels she needs additional therapy.[56]

Former Assistant Principal Rosa Maria Bernal and Former Principal Sylvia Ledesma testified that sexual assault of a minor can be psychologically and physiologically devastating, that it can cause shame, and it can impact that child's ability to adjust as an adult.[57] All of the symptoms listed above, though not comprehensive, are consistent with sexual abuse.[58]

---

[50] *Id.* at 100: 21-101: 1.

[51] *Id.* 101: 9-12.

[52] *Id.* at 108: 8-109:3.

[53] *Id.*

[54] *See* Exhibit C, Redacted Therapy Notes from The Children's Assessment Center.

[55] *Id.*

[56] *See* Jane Doe Dep. 100: 15-16.

[57] *See* Exhibit D, Deposition of Rosa Maria Bernal, 55:6-10; *See* Exhibit E, Deposition of Sylvia Ledesma, 101: 15-102:1; 102:19-23.

[58] The American College of Obstetricians and Gynecologists*, Adult Manifestations of Childhood Sexual Abuse*, August 2011 (Reaffirmed 2017) (Committee Opinion), available at https://www.acog.org/-/media/project/acog/acogorg/clinical/files/committee-opinion-articles/2011/08/adult-manifestations-of-childhood-sexual-abuse.pdf.

### III.
### <u>STANDARD OF REVIEW</u>

In regard to evidence of the non-movant, it is to be believed and all reasonable inferences inure to the favor of his favor, *Willis v. Roche Biomedical Labs., Inc*., 61 F3d 313, 315 (5th Cir. 1995); *see also Matsushita Elec. Indus. V. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Importantly, the Court should refrain from resolving factual disputes by weighing conflicting evidence, *Toney v. Kawasaki Heavy Indus., Ltd*., 763 F. Supp 1356 (S.D. Miss. 1991), aff'd 975 F2d 162 (5th Cir. 1992) or assess its probative value or otherwise decide factual issues. *Byrd v. Roadway Exp., Inc*., 687 F2d 85, 87 (5th Cir. 1982); *Tolan v. Cotton*, 2014 WL 1757856; 134 S. Ct. 1861 (2014) [Courts should adhere to "the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party."].

In short, summary judgment is not appropriate unless, after viewing the evidence in the light most favorable to the nonmoving party, no reasonable fact-finder or jury could return a verdict for that party. *See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000). The central issue in regard to a dispositive motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251- 252 (1986). A review of the facts relative to the operative legal standards in this cause will show that such evidence is not so one-sided in favor of the Defendant ECISD and that its Motion for Summary Judgement should be denied accordingly.

A denial of said Motion is also fully in accord with strong public policy sentiments that summary judgment is a drastic remedy, *Smoot v. Chicago, R. I. & P., Co*., 378 F2d 879 (10th Cir. 1967) and should be used sparingly, *City Nat'l Bank of Fort Smith, Ark. v. Vanderboom*, 422 F2d

221 (8th Cir. 1970). This public policy is even more appropriate when dealing with statutes that

address civil rights of the litigants and are remedial in nature, like Title IX and 1983, in this cause.

Moreover:

> "Statutes of rehabilitation should be construed in a liberal and humanitarian mode thus effectuating successfully the legislature's objective intentions. Such construction of rehabilitative statutes promote the public interest, public welfare, public state policy and the police powers. Such salutary constructions properly disregard technical and meaningless distinctions but give the enactment the most comprehensive application of which the enactments are susceptible without violence to the language therein. *Deep East Texas Regional Mental Health & Mental Retardation Services v. Kinnear*, 550 S.W.2d 550, 563 (Tex. App. – Beaumont, 1994);" *see also Tchereepnin v. Knight*, 389 U.S. 332, 336 (1967) [remedial legislation should be construed broadly to effectuate its purpose].

Last, and even if this Court believes that Defendant has satisfied the elements as

contemplated by Fed. R. Civ. P. 56, Plaintiff notes that, "Even in cases where the movant has

technically discharged his burden, the trial court in the exercise of a sound discretion may decline

to grant summary judgment." *National Screen Service Corp. v. Poster Exchange, Inc*., 305 F.2d

647, 651 (5th Cir. 1962). Such an outcome is also appropriate where important public policy

decisions are involved. *Marcus v. St. Paul Fire & Marine Ins. Co*., 651 F2d 379 (5th Cir. 1981);

*Anderson v. Liberty Lobby, Inc*. at 255-256, as they surely are in this case.

It is with this standard in mind, and their elements noted herein, that Plaintiff's proceed

and provide significant summary judgment evidence to defeat Edinburg CISD's Motion.

### IV.
### SCOPE OF THE PROBLEM

Sexual abuse of students by teachers is an epidemic in not only the state of Texas but in

the entire country. Sexual abuse runs rampant on school campuses as teachers are allowed

unfettered access to minor students with little to no supervision from the schools. **The year 2016**

**saw an *80 percent increase* from 2008 in the number of teachers having improper**

**relationships with students according to an investigation launched by the Texas Education**

**Agency**.[59] One disturbing study conducted by *The Austin American-Statesman* and later published in an article on February 5, 2017, entitled *Data: Find Texas teachers accused of impropriety with a student,* found that from January 2010 through December 2016, **686 teachers in Texas permanently lost their teaching licenses following allegations of impropriety with a student, according to data from the Texas Education Agency**.[60] Teachers from Edinburg CISD were included in this list.[61] Worse yet, the data also revealed that many of these teachers were allowed to resign from the school districts amid allegations of improprieties with students and moved on to other teaching jobs, slipping under the radar.[62] (Indeed, in this case, Francisco Badillo did just that – resigned amid allegations of impropriety, with Edinburg CISD, in an outrageous turn, actually extending appreciation to Badillo for his service in its letter of resignation.[63] According to Plaintiff in this case, an assistant principal had told her that someone in the faculty at Robert Vela High School had tipped Badillo off and suggested to  him that he resign so that he would not face serious consequences.[64]) This data was so alarming that Texas state lawmakers proposed sweeping legislation to prevent teachers from resigning amid allegations and transferring to other school districts.[65] As Texas State Senator Paul Bettencourt remarked, "**We have got to stop turning a blind eye to this. Let's find out what's going on and let's do our best to stamp it**

---

[59] Julie Chang, *Cases of improper teacher-student relationships hit 8-year high*, The Austin American-Statesman, September 21, 2016, https://www.statesman.com/NEWS/20160921/Cases-of-improper-teacher-student-relationships-hit-8-year-high.

[60] Cody Winchester and Julie Chang, *Data: Find Texas teachers of impropriety with a student*, The Austin American-Statesman, February 5, 2017, https://projects.statesman.com/news/20170205-texas-teacher-impropriety.

[61] *Id.*

[62] Julie Chang, *Teachers accused of impropriety often move to other schools*, The Austin American-Statesman, February 9, 2017, https://www.statesman.com/NEWS/20170209/Teachers-accused-of-impropriety-often-move-to-other-schools.

[63] *See* Exhibit F, Letter of Resignation.

[64] *See* Jane Doe Dep. 86: 9-25.

[65] Julie Chang, *Teachers accused of impropriety often move to other schools*, The Austin American-Statesman, February 9, 2017, https://www.statesman.com/NEWS/20170209/Teachers-accused-of-impropriety-often-move-to-other-schools.

out."[66] Governor Greg Abbott also remarked on the distressing statistics, saying "**Some of those teachers are not prosecuted and worse ... some are shuffled off to other schools to continue teaching in other areas, threatening other kids. We are the ones with the duty and the ability to do something about it**."[67]

The above demonstrates just how widespread the problem of teacher-student sexual abuse is in Texas. Defendant Edinburg CISD certainly would have been aware of this data or should have been aware of this data in order to make policy changes to protect students from sexual predators and yet Edinburg CISD did not do so, causing Jane Doe to be sexually assaulted and sexually harassed by Francisco Badillo repeatedly as well as countless other helpless children to be sexually assaulted and sexually harassed by teachers under Defendant's watch.

**V.**
**HISTORY OF ECISD EMPLOYEE-AGAINST-STUDENT SEXUAL HARASSMENT AND SEXUAL ABUSE**

Francisco Badillo is not the only ECISD employee to have sexually harassed or abused a student. Discovery in this litigation and Plaintiff's own research revealed the following additional complaints of school employee against student sexual harassment at ECISD. This list is by no means comprehensive as there could be and probably are many more incidents of which Plaintiff is not aware.[68] Although Edinburg CISD has withheld the identities of the teachers in its list, it is clear from the dates and circumstances that they are the same incidents as listed in the TEA data. The most disturbing revelation from these incidents is that Edinburg CISD allowed the majority of the teachers to resign following the discovery of sexual abuse and sexual harassment.

---

[66] *Id.*
[67] *Id.*
[68] It should be of note that Plaintiff had to go to great lengths to acquire this information from Defendant as Defendant had refused to produce the relevant complaints at the outset in response to Plaintiff's discovery requests, no doubt in an attempt to shield itself from liability. Plaintiff had to file a motion to compel in order for Defendant to produce a list of complaints. Edinburg CISD has watered down the description of these complaints to make them more palatable.

## A.  <u>Catherine Norquest[69]</u>

Starting in 1999, a 25-year-old teacher at Edinburg North High School of Edinburg CISD, named Catherine Norquest, engaged in improper sexual relations with her then 15-year-old student, M.T.[70] Miss Norquest engaged in sex with the minor on numerous occasions, including oral sex and intimate touching of his genitals.[71] Additionally, Norquest would often expose herself to the minor on numerous occasions.[72] In addition to the above-mentioned sexual acts, she also provided alcohol to the minor and would take him across the border to Mexico on trips, where she would have sex with M.T. and give him alcohol, without the parent's knowledge.[73]

While at school, Norquest would touch the minor and hold his hand.[74] Norquest also provided alcohol to other minor male students.[75] In addition to the sex acts and alcohol, Norquest would send numerous sexually suggestive letters to the minor and call the minor on a daily basis in which they would engage in sexually graphic conversations.[76]

In October 26, 2000, Catherine Norquest confessed to the Hidalgo County Deputy Sheriff as well as to two Edinburg North HS officials, the assistant principal and principal, that she had an intimate relationship with the minor student M.T.[77]

M.T and his father Robert ended up filing a lawsuit in 2006, in which Edinburg CISD officials were named as Defendants, accusing the School District officials of failing to discipline or terminate Norquest, retaining her as an employee at the school district for a period of almost four more years, even after they had been made aware of her confession of committing felony

---

[69] *See* Exhibit G, Plaintiffs Robert Twist's and Matthew Twist's First Amended Original Petition.
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *Id.*

sexual assault.[78] She then transferred to P.S.J.A. ISD in Pharr, Texas.[79] The lawsuit also claims that the District officials failed to report the incidents to the State Board of Education, failed to make a report to the parents of M.T, child protective services and to any other person or local law enforcement agency, as required by law.[80] The Plaintiffs in the lawsuit claimed that Edinburg CISD school officials did absolutely nothing to protect M.T. from the continuing prohibited sexual harassment by Ms. Norquest.[81]

### B.  Oscar Gonzalez, Jr.[82]

On February 11, 2011, The Texas Education Agency commenced its certification review of Oscar Gonzalez Jr. According to the police, Mr. Gonzales, a high school teacher at Edinburg CISD, began a relationship with a 17-year-old student in 2009 that led to kissing, hugging and inappropriate touching.[83]

Mr. Gonzales was eventually charged with the Second-Degree Felony of improper relationship with a student and he surrendered his teaching license on August 17, 2011, 187 days after TEA opened its review.[84]

### C.  Miguel Condes[85]

In March 2013, Miguel Condes, a then 25-year-old teacher at Harwell Middle School of Edinburg CISD, was accused of sexual misconduct with a then 14-year-old female student.[86] Condes had taken the female student from school in his vehicle where he sexually assaulted the

---

[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] Cody Winchester and Julie Chang, *Data: Find Texas teachers accused of impropriety with a student*, The Austin American-Statesman, February 5, 2017, https://projects.statesman.com/news/20170205-texas-teacher-impropriety.
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.*

minor.[87] Condes was arrested, eventually charged and found guilty of the Second-Degree Felony of Improper Relationship Between Educator and Student in December 2013.[88] The Court sentenced Condes to 10 years' probation and Mr. Condes surrendered his teaching license on December 17, 2013, 257 days later after the TEA began its certification review on April 4, 2013.[89]

### D.  Ray Cano Jr.[90]

According to the Texas Education Agency, Ray Cano Jr. had most recently worked for Edinburg CISD when the TEA opened its certification review on February 11, 2015. Mr. Cano Jr. surrendered his teaching license on June 13, 2015, just approximately four months later. He was never charged.[91]

#### 1. February 2015

There is a February 2015 incident that Edinburg CISD discloses in its list of complaints describing an investigation that revealed that a male teacher had engaged in a romantic relationship with a student.[92] The employee resigned before termination.[93]

### E.  Michael Jon Jr. McCarthy[94]

Michael Jon Jr. McCarthy had most recently worked for Edinburg CISD when the TEA opened its certification review on February 11, 2015.[95] The TEA officially revoked his teaching license on October 7, 2016, over one year later.[96]

#### 1. February 2015

---

[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] *See* Exhibit H, List of Complaints of Edinburg CISD Employee-Student Sexual Harassment and Assault.
[93] *Id.*
[94] Cody Winchester and Julie Chang, *Data: Find Texas teachers accused of impropriety with a student*, The Austin American-Statesman, February 5, 2017, https://projects.statesman.com/news/20170205-texas-teacher-impropriety.
[95] *Id.*
[96] *Id.*

There is a February 2015 incident that Edinburg CISD discloses in its list of complaints describing an investigation that revealed that a male teacher had engaged in a romantic relationship with a student.[97] The employee resigned before termination.[98]

### F. Jesus Daniel Castillo[99]

Mr. Castillo had most recently worked at Edinburg CISD when the TEA opened its certification review on April 23, 2015. He surrendered his teaching license on December 2, 2015, 223 days later.[100]

### G. February 2016

An investigation revealed that a male teacher at Edinburg CISD had touched a female student's shoulder, put his hand in her coat pocket and patted her on the stomach at school.[101] The employee resigned before termination.[102]

### H. E.M's Complaint Against Francisco Badillo

A minor female student had filed a formal complaint at Robert Vela High School against Francisco Badillo when he pulled her out of class to discuss nude photographs that he had seen of her, telling her she looked nice. The details of such incident are discussed further herein.

### I. Sexual Assaults and Sexual Harassment of Jane Doe

The incidents of Jane Doe are described herein. Mr. Badillo resigned before termination.

### J. September 2017

---

[97] *See* Exhibit H.
[98] *Id.*
[99] Cody Winchester and Julie Chang, *Data: Find Texas teachers accused of impropriety with a student*, The Austin American-Statesman, February 5, 2017, https://projects.statesman.com/news/20170205-texas-teacher-impropriety.
[100] *Id.*
[101] *See* Exhibit H.
[102] *Id.*

An investigation revealed that a male educational aide at Edinburg CISD commented about a student's body and encouraged the student to send photographs to him.[103] The employee resigned before termination.[104]

### K. <u>October 2017</u>

An investigation revealed that a male teacher at Edinburg CISD flirted with a female student and exchanged romantic letters with her.[105] The employee resigned before termination.[106]

### L. <u>Daniel B. Garcia[107]</u>

In March 2018, the police arrested a Robert Vela High School teacher named Daniel B. Garcia on a charge of indecency with a child.[108] The arrest of the Vela High School teacher came after a student alerted the principal that Garcia had inappropriately touched a 16-year-old classmate.[109] The incident that led to Garcia's arrest occurred February 19 when he allegedly "stroked" the student's arm and touched her breast over her clothing while they were inside his office.[110] Video surveillance shows the student entering Garcia's office, remaining there for over 10 minutes.[111]

Mr. Garcia resigned before termination.[112]

### M. <u>May 2018</u>

---

[103] *Id.*
[104] *Id.*
[105] *Id.*
[106] *Id.*
[107] Molly Smith, *Edinburg Vela mariachi teacher arrested for indecency with a student*, The Monitor, March 14, 2018, available at https://www.themonitor.com/2018/03/14/edinburg-vela-mariachi-teacher-arrested-for-indecency-with-a-student.
[108] *Id.*
[109] *Id.*
[110] *Id.*
[111] *Id.*
[112] *See* Exhibit H; In Francisco Lumbreras' deposition, he testified that Mr. Garcia was "terminated right away", which is factually inaccurate (*See* Lumbreras Dep. 54: 11-22).

An investigation revealed that a male teacher at Edinburg CISD improperly texted a female student regarding a romantic solicitation.[113] The employee resigned prior to termination.[114]

## VI.
## DEFENDANT EDINBURG CISD'S MOTION FOR SUMMARY JUDGMENT ON JANE DOE'S TITLE IX CLAIM MUST BE DENIED

Title IX of the Education Amendments of 1972 provides, in pertinent part:

[N]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. §1681(a). Title IX should be given "a sweep as broad as its language." *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982). The U.S. Supreme Court emphasizes the prophylactic nature of Title IX, describing a principle objective of the law is "to provide individual citizens effective protection against [discriminatory] practices." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998). A school employee's sexual abuse or harassment against a student constitutes discrimination prohibited by Title IX. *See, e.g.*, *Gebser*, 524 U.S. at 277-93; *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 75 (1992); *Jennings v. Univ. of N.C.*, 482 F.3d 686 (4th Cir. 2007); *Baynard v. Malone*, 268 F.3d 228, 237 (4th Cir. 2001). Private actions for monetary damages may be brought against federal fund recipients under Title IX for employee-against-student sexual harassment. *See Franklin*, 530 U.S. at 76; *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709 (1979).

To have a valid Title IX cause of action, each of the following elements must be established: (1) the recipient of Federal financial assistance had actual knowledge of the harassment; (2) the harasser was under the recipient's control; (3) the harassment was based on the victim's sex; (4) the harassment was "so severe, pervasive, and objectively offensive that it

---

[113] *Id.*
[114] *Id.*

effectively bar[red] the victim's access to an educational opportunity or benefit"; and (5) the recipient was deliberately indifferent to the harassment. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011).

The Fifth Circuit has held that a school district has actual knowledge of the harassment when it knew that "there was a *substantial risk* that sexual abuse would occur." *Chenier v. Bd. of Supervisors for the La. Sys.*, 2017 U.S. Dist. LEXIS 125660 at *22 (E.D. La. August 8, 2017) (emphasis added).

Defendant does not dispute elements (2), (3) or (4). In fact, Defendant does not even dispute the second half of element (1) in that Edinburg CISD had actual knowledge of Jane Doe's assault from her outcry on May 25, 2017. And indeed, it is without question that Edinburg CISD is a recipient of Federal financial assistance, Mr. Badillo, the harasser, was under Edinburg CISD's control, the harassment was based on the Jane Doe's sex and the harassment was so severe, pervasive and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit as the evidence makes clear.

Edinburg CISD argues that it was not deliberately indifferent towards Jane Doe's harassment and that it did not know that there was a substantial risk that sexual abuse would occur after previous complaints made against Badillo. Here, the parties dispute whether the actual notice requirement may be satisfied by past complaints from students regarding similar sexual harassment allegations against the same teacher, or if Defendant must have had actual notice of the specific acts of sexual harassment against Plaintiff herself. The Fifth Circuit has found that actual notice can be satisfied by past complaints from different students regarding similar sexual harassment allegations against the same teacher, holding:

> The Court notes that in *Gebser*, the Supreme Court did not explicitly require actual knowledge of the particular instance of harassment complained of by a plaintiff. Rather,

20

the Supreme Court focused on a school's actual knowledge of "***discrimination in the recipient's programs***" and whether the school adequately responded to "end the harassment or to ***limit further harassment***." *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

*Chenier v. Bd. of Supervisors for the La. Sys.*, 2017 U.S. Dist. LEXIS 125660 at *21 (E.D. La. August 8, 2017) (emphasis added).

The Court in *Chenier* continued on holding:

The Fifth Circuit has held that a school district has actual knowledge of the harassment when it knew that "there was a *substantial risk* that sexual abuse would occur." In fact, several other courts of appeal and district courts have determined that knowledge of a history of similar sexual misconduct with students may satisfy the actual notice prong. **Moreover, a requirement that actual notice is not provided unless a university receives a report of sexual harassment from the Title IX plaintiff herself "would protect [universities] from liability whenever a student was abused by a teacher, although the [university] might have had notice that the teacher had abused other students in the past**."

*Id.* at *22 (emphasis added).

In *Chenier,* the Court held that Plaintiff had pointed to sufficient evidence to create a genuine issue of material fact on whether Defendant had actual notice of discrimination in its programs through past allegations against the professor. *Id.* Those allegations involved inappropriate comments. *Id.* Accordingly, the Court held that Plaintiff had pointed to sufficient evidence to create a genuine dispute of material fact as to whether Defendant had "actual knowledge of discrimination in the [its] programs" or actual notice that "there was a substantial risk that sexual abuse would occur" when there had been past complaints about the professor by different students. *Id.* Here, in this case, it went beyond just inappropriate comments by Badillo towards E.M. as a past complaint. He went around the school for 2 days searching for her and stalking her, stalking her friends, pulled her out of class, pulled her friends out of class, got E.M. alone, and talked about her nude photographs, which he said "she looked nice." And the ECISD also knew that there was flirting between Badillo and Jane Doe previously.

Furthermore, the Office for Civil Rights has made it clear that while the recipient must have actual notice of the events culminating sexual harassment or sexual discrimination, **there is no requirement that such notice must be given by the victim herself**.[115] In a letter from the Office of Civil Rights and the U.S. Department of Education, which explains the requirements of Title IX and provides significant guidance to Federal financial assistance recipients, it states in relevant part:

> Regardless of **whether a harassed student, his or her parent, or a third party files a complaint** under the school's grievance procedures or otherwise requests action on the student's behalf, **a school that knows, or reasonably should know, about possible harassment must promptly investigate** to determine what occurred and then take appropriate steps to resolve the situation.[116]

That is, when the university receives notice from *anyone*, the university is required to respond immediately by opening an investigation and taking the appropriate steps to address the matter. Notice given by anyone, not just the victim, shall be adequate and in satisfaction of this element. Defendant does not deny that actual notice was given to a school official regarding E.M.'s. complaint and Jane Doe's complaint, addressed herein, who has authority to take corrective measures on its behalf.

A.    **Edinburg CISD Had Actual Notice**

In order to show actual notice, Plaintiff will demonstrate the history of prior complaints made against Badillo and by Badillo. They are as follows:

1. **Mr. Badillo Told Assistant Principal Francisco Lumbreras that Jane Doe was Flirting With Him.**

---

[115] *See* Exhibit I, OCR "Dear Colleague Letter" at p. 4. (This letter was in effect at the time of Jane Doe's assault and it was the prevailing regulation at the time and applicable to Edinburg CISD).
[116] *Id.*

According to the CPS Investigation Report and Mr. Badillo's Voluntary Statement regarding Jane Doe's Incident, Mr. Badillo said that a few weeks prior to Jane Doe's outcry, he had notified Francisco Lumbreras, his supervisor, that he was getting the feeling that Jane Doe was *flirting* with him, hanging around his class a lot and taking photographs of him and his wife.[117]

This disclosure should immediately have raised a red flag with Mr. Lumbreras that something wrong was occurring between Jane Doe and Badillo.[118] At the very least, the School should have conducted an investigation into the matter. However, no further action was taken and Mr. Badillo remained on campus despite this complaint.[119]

### 2.  The Complaint by Assistant Principal Rosa Maria Bernal Against Badillo.

Assistant Principal Rosa Maria Bernal had reported her concerns about Badillo possibly being on drugs to Mr. Lumbreras, prior to Jane Doe's assault.[120] She said that she believed he was on drugs because Mr. Badillo showed up to a meeting extremely late, looking exhausted and with blood shot red eyes.[121] However, the way this complaint was handled, as is Edinburg CISD's modus operandi, is Lumbreras apparently "spoke with him and there was nothing" and Mr. Lumbreras then informed Ms. Bernal that she was "wrong".[122] Mr. Lumbreras never explained to Ms. Bernal how or why she was wrong.[123] That was the extent of the investigation according to Ms. Bernal.[124] Ms. Bernal said that this "investigation" should have been documented on a piece

---

[117] *See* Exhibit J, CPS Investigation Report, p. 14; See Exhibit K, Voluntary Statement of Francisco Badillo.
[118] This argument goes again towards the lack and/or inadequacy of training for detection of sexual abuse at Edinburg CISD. But regardless, Mr. Lumbreras definitely knew this was a red flag and should have done an investigation per the law and rules.
[119] *See* Exhibit J.
[120] *See* Bernal Dep. 19: 6-16, 21-25.
[121] *Id.* at 20: 1-18.
[122] *Id.* at 20: 19-25.
[123] *Id.*
[124] *Id.* at 21: 1-12.

of paper and communicated to the principal.[125] However, Edinburg CISD failed to include this complaint in Mr. Badillo's personnel file that it produced in discovery.[126]

### 3.   The Complaint by E.M. Against Badillo in April 2017.

One of the most damning pieces of evidence to emerge from this case is the complaint made by E.M., a minor student at Robert Vela High School, against Francisco Badillo on April 11, 2017, eventually codified in an Information Report by the Edinburg CISD Police Department.[127]

On April 11, 2017, before Jane Doe's complaint on May 25, 2017, E.M. and another female student approached a police officer at Robert Vela High School to make a formal complaint against a male teacher who was Badillo.[128] The officer then escorted the two students to see Assistant Principal Jennifer Culbertson who advised Culbertson that the students wished to file a complaint.[129] In the Report, it states that Badillo had been going around the school and into E.M.'s classes looking for her all day and had been asking about E.M. for the *past 2 days*.[130] Badillo kept badgering E.M's friend, asking her to text E.M. to tell her that he needed to talk with her.[131] **E.M. testified that Badillo had also *pulled her two friends out of their classes* and got them alone to ask about her.[132]** Badillo visited E.M's second period class on April 11 and pulled her out of class.[133] Worse, Badillo was not E.M.'s teacher at the time.[134] Worse yet, Badillo did not pull E.M. out of class for any legitimate purpose.[135] **He pulled E.M. out of class to discuss nude**

---

[125] *Id.* at 21: 13-23.
[126] *Id.* at 22: 4-7.
[127] Defendant initially responded "none" to Plaintiff's request for the Affidavit of E.M., which Plaintiff had requested in discovery. It was only after Plaintiff produced a signed declaration from E.M. that Defendant finally "found" and produced the information report and affidavit which was extremely pertinent to Plaintiff's case. Further, the Information Report was not included in Mr. Badillo's personnel file.
[128] *See* Exhibit L, Information Report, p. 3.
[129] *Id.* at p. 4.
[130] *Id.*
[131] *Id.*
[132] *See* Exhibit N, Deposition of E.M., 89: 5-10.
[133] *See* Exhibit L., p. 4.
[134] *Id.*
[135] *Id.*

photographs of her that she supposedly had on Snapchat.[136] Badillo told E.M. she had "***nothing to be ashamed about***" and that "***she looked nice***".[137] E.M. stated that she did not know what he was talking about and felt very uncomfortable.[138]

Mr. Badillo told his supervisor Francisco Lumbreras that he was "concerned" for E.M.[139] E.M. testified that she knew that Badillo was not "concerned" for her at all and knew his true intentions which were to do something sexual with her.[140] She thought he was a pedophile after he made those remarks to her and immediately noticed it as a red flag.[141] If Mr. Badillo was so concerned for her, then he should have approached an administrator, not a minor child.[142] E.M. testified that when Mr. Badillo told her she "looked nice", she said that she knew he was commenting on her body and her physical appearance.[143] E.M. testified that as Badillo said these remarks, he looked her up and down with a flirtatious smirk on his face and moved in very close to her.[144] He made sure to get E.M. alone when he made these remarks and made sure no one else was around.[145] This conduct upset E.M. so much that she felt that she had to make a formal complaint.[146] If a child knows exactly what Badillo's intentions are, then certainly the School filled with adults, that is charged with protecting that child from harm, knew that Badillo was not actually "concerned" for E.M. The School knew that Badillo was not actually "concerned at all" but wanted to have sexual relations with E.M. The School's claims to the contrary, in a desperate, blatant

---

[136] *Id.*
[137] *Id.*
[138] *Id.; See* E.M. Dep. 97: 14-25 (In her deposition, E.M. testified that she was "literally shaking" after thinking back on her incident with Badillo. She felt "disgusted". It was "disgusting". She was very afraid.)
[139] *See* Exhibit L.
[140] *See* E.M. Dep. 21: 22-25, 92: 17-20 and 107: 8-19.
[141] *Id.* at 32: 14-15 and 33: 17-34:5.
[142] *Id.*
[143] *Id.* at 33: 5-8, 14-15.
[144] *Id.* at 34: 15-18 and 90: 5-8, 16-18.
[145] *Id.* at 89: 11-21.
[146] *Id.* at 92: 7-16.

attempt to save face in the face of a lawsuit – via canned responses for deposition testimony – are frankly laughable. At one point in E.M.'s deposition, Defense counsel even asked her if maybe Badillo was telling E.M. that "you look like a nice person."[147] Ms. Ledesma parroted this same rehearsed line in her deposition at one point.[148]

Instead of firing or suspending Mr. Badillo, all that happened was Assistant Principal Francisco Lumbreras "advised Badillo that he is to advise an administrator before approaching any student" and then "Badillo was released back to his duties as per Mr. Lumbreras."[149]  Even though Mr. Lumbreras testified that he knew it was inappropriate pictures "or whatever" Badillo wanted to discuss with E.M.[150] No other actions were taken.[151] No extra supervision. No additional sexual harassment training. No termination. No suspension. The School did not report the incident to Texas Department of Family and Protective Services[152] as required by law and the Employee Handbook. Nothing. The School did not alert the staff or the teachers about this complaint.[153] The School did not alert the student body about this complaint.[154] Jane Doe testified she would have liked to have known about E.M.'s complaint.[155] The School did not alert other parents about this complaint.[156] No administrator at the school questioned other female students to see if they had experienced similar conduct with Mr. Badillo.[157] Mr. Badillo was free to continue preying on and sexually assaulting minor students. Mr. Badillo was free to continue pulling minors out of their classes with no approval and no legitimate reasons, who were not even his students.

---

[147] *Id.* at 34: 6-10 (E.M. firmly replied "no" to Defense counsel's question.).
[148] *See* Ledesma Dep. 68: 1-5.
[149] *See* Exhibit L, p. 4.
[150] *See* Exhibit M, Deposition of Francisco Lumbreras, 22:13-23:1.
[151] *See* Exhibit J, p. 11.
[152] *See* Lumbreras Dep. 53: 20-54: 10.
[153] *See* Ledesma Dep. 80: 5-8, 16-17.
[154] *See* E.M. Dep. 81: 7-10.
[155] *See* Jane Doe Dep. 107: 16-24.
[156] *See* Ledesma Dep. 80:25-81:3.
[157] *Id.*  at 76: 18-21.

**Former Assistant Principal Jennifer Culbertson testified that what Badillo did with E.M. was *inappropriate* and *criminal*.[158] Additionally, Ms. Culbertson admitted that the fact that Mr. Badillo was not fired or suspended after this incident with E.M. demonstrated a major policy problem.[159] Assistant Principal Bernal testified that the incident with E.M. was really creepy and disturbing and that personally she would have done more than just give a verbal directive.[160] Ms. Bernal also testified that as a parent she would have been very upset and incredibly concerned by Mr. Badillo's behavior towards her child.[161] <u>E.M. testified she was not surprised that Badillo eventually forced himself on someone after her complaint.</u>[162]**

Defendant states in its Motion that the complaint was "addressed and resolved as shown by the student's own testimony".[163] **<u>This statement is in fact in direct contrast to E.M.'s testimony.</u>** E.M. testified that the School never gave her a copy of the Information Report or her affidavit, and she never even knew that an Information Report existed as no one at the School made her aware of it.[164] She said the School should have given her a copy of the report and affidavit.[165] The School never told her or her parents that the complaint had been "resolved",[166] as required by the Employee Handbook so the parents may have had a chance to appeal. Regardless, she believes that the School did **<u>not</u>** resolve the complaint.[167] She believed that Mr. Badillo should have been fired on the spot or suspended for her incident.[168]  E.M. testified that the School did not take her complaint seriously, no one at the School followed up with her after her initial complaint,

---

[158] *See* Exhibit O, Deposition of Jennifer Culbertson, 58: 13-59:4.
[159] *Id.* at 60: 5-18.
[160] *See* Bernal Dep. 66: 5-12; 68: 8-20; 70: 12-24.
[161] *Id.* at 66: 13-67:1.
[162] *Id.*
[163] *See Defendant's Motion for Summary Judgment*, at ¶ 18 (Dkt No. 44).
[164] *See* E.M Dep. 70: 20-25.
[165] *Id.* at 74: 21-24.
[166] *Id.* at 71: 1-3, 6-7.
[167] *Id.* at 87: 2-3.
[168] *Id.* at 85: 15-20; 96: 19-25.

the School was not attentive to her concerns, and she believed the School was trying to sweep her complaint under the rug.[169] In fact, she said that Edinburg CISD had a long, sordid history of sweeping things under the rug.[170] A complete lack of transparency on the school's part per her testimony.[171] E.M. testified that had Mr. Badillo been fired after her incident, then Jane Doe would not have been raped repeatedly by Badillo on campus and off campus.[172] She testified that the School did not do anything to prevent Mr. Badillo from doing something inappropriate with another student.[173] E.M. testified that when the allegations of sexual assault by Jane Doe against Badillo became public, E.M. was not surprised at all.[174] E.M. hopes that justice is served with this lawsuit.[175]

Ms. Ledesma made a deliberate misrepresentation to Child Protective Services when Special Investigator Roy Estrada spoke with her regarding Jane Doe's incident, stating that "Francisco Badillo had no previous history in regards to inappropriate behavior towards a student, nor does he have any disciplinary reprimands against him."[176] This statement was in fact false. Ms. Ledesma testified that the reason she made this statement was that to her knowledge the "investigation" concluded that nothing inappropriate happened with E.M., but in the same vein admitted that **_nowhere_** in the information report did it state that nothing inappropriate occurred.[177] Ms. Ledesma was just "told", once again, from Mr. Lumbreras that there was no inappropriate behavior.[178] Ms. Ledesma also admitted that she did **_not_** inform CPS about the complaint made by

---

[169] *Id.* at 111:4-112:2; 38: 8-13; 83: 16-22.
[170] *Id.*
[171] *Id.* at 82: 9-14.
[172] *Id.* at 103: 3-11.
[173] *Id.* at 96: 7-17.
[174] *Id.* at 106: 14-22.
[175] *Id.* at 65: 1-2.
[176] *See* Exhibit J, p. 10.
[177] *See* Ledesma Dep. at 90:3-91:3.
[178] *Id.*

E.M when CPS spoke to her.[179] And in fact, CPS found out rather quickly by itself that there was a complaint made previously against Badillo after speaking with Ms. Ledesma.[180]  CPS also concluded that there was "reason to believe" that sexual abuse did occur.[181]

On these facts, a reasonable jury could find that the university was deliberately indifferent. For the School to consistently maintain that it did not have actual knowledge of discrimination in its programs is outright disingenuous in light of the overwhelming evidence and frankly, an insult to Jane Doe, E.M., and countless other victims who have experienced sexual assault and sexual harassment at Edinburg CISD.  Plaintiff has satisfied all the elements of her Title IX claim or at the very least Plaintiff has certainly raised a genuine issue of material fact here. Defendant's arguments fail. Therefore, Defendant's Motion for Summary Judgment as to Plaintiff's Title IX claim must be denied.

4.    **Prior Sexual Assault and Sexual Harassment at Edinburg CISD as Described in Section III.**

In addition to E.M.'s complaint, Badillo's report to Mr. Lumbreras and Ms. Bernal's report to Mr. Lumbreras, Edinburg CISD has a long history of sexual assault and sexual harassment complaints made against teachers as detailed above in Section III supra.

These prior assaults and harassment go towards showing actual notice per the Fifth Circuit. Edinburg CISD certainly had actual notice of "discrimination in its programs" and yet was deliberately indifferent to the discrimination and harassment. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

Therefore, Edinburg CISD most definitely had actual notice or at the very least Plaintiff has raised a genuine issue of material fact rendering summary judgment improper.

---

[179] *See* Ledesma Dep. 94: 10-13.
[180] *See* Exhibit J, p. 11.
[181] *Id.* at 20.

## VII.
## DEFENDANT EDINBURG CISD'S MOTION FOR SUMMARY JUDGMENT ON JANE DOE'S 1983 CLAIM MUST BE DENIED

It is well established that the Due Process Clause of the 14th Amendment protects the right of a child to be free from sexual abuse inflicted by a schoolteacher or employee. *See, e.g.*, *Doe v. Taylor* I.S.D., 15 F.3d 443, 451 (5th Cir. 1994); *Doe by Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1406 (5th Cir. 1996); *Doe v. Beaumont I.S.D.*, 8 F. Supp. 2d 596, 606 (E.D. Tex. 1998) ("Obviously, the rape of a student by a school employee qualifies as physical sexual abuse and as a violation of one's bodily integrity").

Here, it is undisputed that Mr. Badillo was an employee of Robert Vela High School of Edinburg CISD and he sexually abused Jane Doe, a Robert Vela High School student, on and off school property. There is no question Jane Doe's constitutional rights were violated. Defendant does not and cannot contend otherwise.

For decades the U.S. Supreme Court, and U.S. Department of Education, have notified schools, including Edinburg CISD, of the unacceptable prevalence of student sexual assault, the extraordinary harm children suffer from school employee sexual abuse, and schools' duties to take proactive measures and protect their students from sexual violence and harassment. In 1998, the U.S. Supreme Court stated, "<u>[t]he number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too common aspect of the educational experience</u>." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998). In 2001, the U.S. Department of Education OCR issued *Revised* Sexual Harassment Guidance regarding harassment of students by, *inter alia*, school employees.[182] The Guidance made clear

---

[182] *See* U.S. Department of Education, OCR, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, Washington, D.C., 2001 ("2001 Guidance, available at https://www2.ed.gov/about/offices/list/ocr/docs/shguide.html.

schools are responsible for taking prompt and effective action to stop and prevent the recurrence

of a school employee's sexual harassment of a student.[183] The Office for Civil Rights ("OCR")

also stated, "schools need to ensure that employees are trained so that those with authority to

address harassment know how to respond appropriately, and other responsible employees know

that they are obligated to report harassment to appropriate school officials.[184] Training for

employees should include practical information about how to *identify* harassment and, as

applicable, the person to whom it should be reported."[185]

**A.**     **ECISD Had No Policy Requiring Student Accountability or Preventing a Staff Member like Badillo from Being Left Alone with a Child for Long Periods of Time.**

At the time of Jane Doe's assaults, the District had no policy requiring the school or teacher

to account for the whereabouts, monitor the whereabouts of the children or address their absence

under their charge as seen below from discovery responses[186]:

> 10. Please provide a copy of any policy or procedure that addresses removing a child from the classroom, and monitoring of that child or the whereabouts of that child once the child has left the classroom.
>
> **RESPONSE:**
> There is no specific policy that sets out a specific procedure for removing students from a classroom.
>
> 11. Please provide a copy of any policy or procedure that addresses absence of a student from class.
> **RESPONSE:**
> There is no specific policy that sets out a specific procedure for removing students from a classroom.

Indeed, Assistant Principal Rosa Maria Bernal admitted in her deposition that if a parent called the

school and wanted to know the exact whereabouts of her child when a teacher who was not the

---

[183] *Id.*
[184] *Id.*
[185] *Id.*
[186] *See* Exhibit P, Defendant Edinburg CISD's Responses to Plaintiff's Discovery Requests.

child's teacher had pulled the student out of class, then Ms. Bernal would have to tell the parent

that she did not know the location of that parent's child due to a lack of policy.[187] Ms. Bernal

admitted that there should be a policy addressing this issue:

> 8 Q. (BY MR. BUZBEE) So I'm trying to -- as a
> 9 parent I've called you and I've asked you, "Where is my
> 10 child?" And your answer is, "I do not know," true?
> 11 A. That is correct.
> 12 Q. That's your answer?
> 13 A. That is correct.
> 14 **Q. And all you can tell me is my child, that my**
> 15 **teach -- the teacher, my child's teacher let her be**
> 16 **taken out of class by some roving robotics professor and**
> 17 **you don't know where he took her. Bottom line, that's**
> 18 **what you would have to tell me, right?**
> 19 **A. Correct.**
> 20 **Q. And there is no policy in place that would**
> 21 **prevent her being pulled from class like that. We've**
> 22 **already established that, haven't we?**
> 23 **A. Yes.**
> 24 Q. And there should be, shouldn't there?
> 25 MR. GARZA: Objection, form.
> 1 Q. (BY MR. BUZBEE) I mean, I know it's hard to
> 2 admit it, ma'am. But there should be, shouldn't there?
> 3 A. For the safety of the students.
> 4 Q. Yes.
> 5 A. For the safety of anybody.
> 6 **Q. That's the answer I'm looking for. There**
> 7 **should be, right?**
> 8 **A. Yes.**[188]

No paperwork was required to remove a child from the class.[189] No policy required such. The

School would just "hope" that the teachers will follow the "verbalized" policy.[190] Nor was there a

policy preventing a teacher – or any other staff member for that matter – from taking a student out

of the class without written authorization.[191] And, at the time, ECISD had no policy preventing a

---

[187] *See* Bernal Dep. 61: 8-62:8.
[188] *Id.*
[189] *Id.* at 78: 9-79: 4.
[190] *Id.*
[191] *Id.*

staff member like Badillo from being left alone for long periods of time with a child without supervision.[192] Ms. Ledesma admitted that this policy should have been in place.[193] Further, the District had no policy prohibiting a teacher like Badillo from being able to remove a child from class and take her wherever he chose, with any excuse, for as long as he chose as demonstrated by Defendant's discovery responses, sworn to and verified by Edinburg CISD Assistant Superintendent Dr. Rebecca Morrison[194] below:

> 3. Identify any and all procedures that regarding 1) the removal of a student from a classroom; 2) the subsequent arrival of that student to the stated destination and 3) ultimately their return to the classroom.
>
> **ANSWER:**
>
> There is no specific policy that sets out a specific procedure for removing students from a classroom. Students can be removed by administration, security or campus police for official school district related issues. Teachers are given the discretion as to whether or not they permit a student to be temporarily excused from class for extra-curricular activities, personal needs or some other academic need.
>
> 8. Please provide a copy of the policy or procedure that allows a teacher and/or staff member to remove a child from the classroom.
>
> **RESPONSE:**
> There is no specific policy that sets out a specific procedure for removing students from a classroom.

Ms. Bernal confirmed that a teacher could come to that child's classroom with *any excuse* and pull her out.[195] Assistant Principal Culbertson testified that there should have been a policy in place to address and prevent a removal of a student from the classroom.[196] Principal Ledesma also admitted there should have been a policy addressing removal.[197] Had there been such a policy in place, the sexual assaults would not have occurred. Now, after multiple assaults, and two lawsuits, one policy

---

[192] *See* Ledesma Dep. 61: 11-15.
[193] *Id.* at 62: 11-15.
[194] *See* Exhibit O.
[195] *See* Bernal Dep. 45: 4-15.
[196] *See* Culbertson Dep. 22: 14-25, 23: 7-8, 23:18-24:1.
[197] *See* Ledesma Dep. 40: 6-41:1.

has been put into place. According to former Principal Sylvia Ledesma, there is now a written policy stating that a teacher cannot be left alone with a child.[198]

The difference between a policy and a procedure can be confusing. Plaintiff submits that the School Board could easily make a policy requiring that, from hence forward, ECISD will ensure that: (1) it knows where students are at all times; (2) written authorization is required to remove a student from class, and (3) no staff member can be alone with a child for extended periods of time, without an approved, legitimate purpose. The Superintendent could then implement such policies in whatever procedural manner he pleased.

The case of *Estelle Reeves, et al v. Texas City Independent School District, et al;* Civil Action G-06-11, is instructive for this Court. In that case, similar to this case, a minor child had repeatedly been removed from his class by a staff member at Texas City ISD where the staff member would sexually abuse the child on campus. *Id.* Similar to this case, Texas City ISD had no policy addressing the removal of the child and accounting for the whereabouts of that child. *Id.* Defendant Texas City ISD countered that it had a policy addressing sexual abuse and training on sexual abuse at the beginning of the school year. *Id.* However, the Court, in its Order Denying the District's Summary Judgment and upholding Plaintiffs' 1983 claim, held that the mere fact that the District had a policy addressing sexual abuse is not sufficient:

> "Defendants assert that a training session had been conducted and pamphlets regarding the detection and reporting of possible sexual abuse had been distributed, yet John Doe was allowed to be removed from his classroom on numerous occasions, for any reason at all, by an untrained staff member. The staff member was not required to complete paperwork regarding the reason for removal, the destination of the removed child, or the expected time of return. Despite the alleged adequacy of the policies of the school district, no teacher or other school employee ever became suspicious on the numerous days when John Doe did not return to class in a timely manner; the occurrences were never reported, and the frequency of removal was never challenged. **It would therefore appear that any policy in place at the time John Doe was assaulted was virtually worthless, as little effort**

---

[198] *See* Ledesma Dep. 61: 16-25.

**appears to have been expended to ensure that the policies were known of, understood and implemented.**

     **The mere fact that the District had a policy that addressed sexual abuse is, contrary to Defendant's position, is just the beginning of the appropriate inquiry. The real issue in this case is whether the implementation of that policy, through education and training, was adequate to sufficiently achieve its goal; if not, the inadequacy can justifiably be said to represent school policy.** It may defy common sense to assert that TCISD would actually have a policy of not taking reasonable steps to protect its most helpless children from sexual predators. **But, where the need for heightened education and training is so obvious, and the inadequacy has twice been shown to result in the violation of those children's constitutional rights, the policymakers of the school district can reasonably be said to have been deliberately indifferent to the children's needs**. Cf. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)."

Report and Recommendation by Judge John R. Froeschner, Signed May 18, 2007, Civil Action G-06-113 in the United States District Court for the Southern District of Texas Galveston Division.

The U.S. Supreme Court in *Canton* held similarly:

     "It may happen that in light of the duties assigned to specific officers or employees **the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need**."

*Canton*, 489 U.S. 378, 390 (1989) (emphasis added).

     If policies had been in place, Jane Doe would not have suffered sexual assault. Edinburg CISD was deliberately indifferent by not having policies.

## B.    ECISD Had No Training in the Detection of Sexual Abuse.

     ECISD had no specific training in the *detection* of sexual predators and sexual abuse according to the testimony of former Assistant Principal Rosa Maria Bernal and former Principal Sylvia Ledesma.[199] Ms. Ledesma did not seem to understand the meaning of "detection."[200] Indeed, the Assistant Principal Rosa Maria Bernal made this lack of training clear when she said, shockingly, that the student's teacher can determine whether the student should go with Badillo

---

[199] *See* Bernal Dep. 29: 7-13; *See* Ledesma Dep. 18: 1-5.
[200] *Id.* at 17: 23-25.

when he comes to the classroom *based on the minor's reaction and the minor's indication*.[201] Ms. Bernal said that Jane Doe, a minor child, never showed any signs that she did not want to go with Mr. Badillo and so that is why the teacher allowed Jane Doe to be taken by Mr. Badillo out of the class.[202] It was at this point that Plaintiff's counsel had to remind Ms. Bernal in the deposition that a minor may willingly participate but cannot consent as a matter of law to which Ms. Bernal agreed.[203] In other words, by ECISD's standards, the child must fend for herself as the teacher relies on the child to know if something is wrong, which is completely backwards in thinking and training. This admission is one from a witness that has had no such sexual abuse training whatsoever. This admission additionally reveals that other teachers do not receive this training either. If she had had such training, she would have known right away that child victims often willingly participate but cannot consent as a matter of law. The school's policy should **not** be one of basing red flags off a minor child's reaction.

The fact that Mr. Badillo was pulling Jane Doe out of class not one, not two, but multiple times should have thrown up serious red flags for the School. Ms. Culbertson admitted that it raises red flags and is a serious problem from her point of view as an administrator.[204] It got so bad that one of Jane Doe's teachers, Noemi Vela, stated in her affidavit that it was "becoming a habit."[205] If the teachers had been trained at all on detection and/or identification of sexual abuse, they would have known that this behavior is alarming and consistent with some type of wrongdoing. If they had training, the teachers would have understood Badillo violated proper boundaries between employees and students, when, *inter alia,* he continuously singled out Jane Doe and other young,

---

[201] *See* Bernal Dep. 45: 1-18.
[202] *Id.* at 60: 18-20.
[203] *Id.* at 60: 21-61:1.
[204] *See* Culbertson Dep. 62:22-63:5.
[205] *See* Exhibit Q, Affidavit of Noemi Vela.

female students for friendship and attention, and Badillo's conduct constituted grooming and signaled his inappropriate sexual misconduct against Jane Doe and other students.[206] The School would have known to *be particularly alert to signs of employee-on-student sexual harassment*, in part because a student like Jane Doe may not report such sexual misconduct because she believes "any objections would be ineffective in stopping the harassment or may fear that by making objections he or she will be singled out for harassing comments or other retaliation."[207]

Additionally, the School did **not** provide the teachers with the data on frequency of sexual abuse by teachers in schools as referenced supra in the article by *The Austin American-Statesman*.[208] The assistant principals and principal admitted in their depositions that they would have liked to have been made aware of these statistics to help them do their job better.[209] This data is something the School should have provided to the administrators as part of their training on sexual abuse.[210] The School did not make the teachers aware of the prior incidents and complaints of sexual assaults and sexual harassment at Edinburg CISD.[211]

**_Nowhere_** in the Training Video (Exhibit K to Defendant's Motion), Employee Handbook (Exhibit G to Defendant's Motion), or Defendant's training information to staff (Exhibit J to Defendant's Motion) does it discuss *detection* or *identification* of sexual predators or how to *detect* or *identify* sexual abuse. Ledesma confirmed there was no training on detection of sexual abuse in her deposition. Further, Defendant tries to make the argument that the School had "four police

---

[206] *See* U.S. Department of Health and Human Services Administration for Children and Families, Office on Child Abuse and Neglect, "The Role of Educators in Preventing and Responding to Child Abuse and Neglect", Washington, D.C., 2003, available at https://www.childwelfare.gov/pubPDFs/educator.pdf

[207] *See* U.S. Department of Education, OCR, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, Washington, D.C., 2001 ("2001 Guidance"), Section V(A)(2) ¶ 3, available at https://www2.ed.gov/about/offices/list/ocr/docs/shguide.html.

[208] *See* Culbertson Dep. 35: 17-25, 36: 15-21, 37: 3-11, 38: 1-13, 40: 3-12; *See* Bernal Dep. 36: 25-37:10.

[209] *Id.*

[210] *Id.*

[211] *See* Culbertson Dep. 38: 14-22; *See* Bernal Dep. 41:5-42:6.

officers patrolling the school." (*See* Affidavit of Sylvia Ledesma attached to Defendant's Motion) That does **not** satisfy the training requirement. There is no evidence that these police officers were trained on how to identify and detect sexual abuse. Indeed, video surveillance obtained from the ECISD police shows on May 24, 2017, Francisco Badillo going into Room #736 and then walking out and walking to Room #721 and waits for Plaintiff Jane Doe who walked out of Room #736 and walked into Room #721 with Badillo. This should have raised flags for the police but they were clearly not trained properly and therefore no action was taken by them that day. As stated in more detail herein, the School *cannot pass off its Title IX obligations onto the police*. This fact is only hurting Defendant's argument. Defendant's training is wholly inadequate or nonexistent as described above. The training video is sorely outdated. And as the Courts have made clear, a mere policy on sexual abuse is not sufficient. Just because you give an employee a handbook is **not enough**. The School has to ensure these policies are being followed and implemented.

Moreover, the high degree of predictability that students would suffer sexual abuse also supports an inference of causation here. *See Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409-10 (1996). More specifically, the U.S. Supreme Court there held:

> The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice – namely a violation of a specific constitutional or statutory right. The high degree of predictability may also support an inference of causation – that the municipality's indifference led directly to the very consequence that was so predictable.

*Id.* (emphasis added).

For the foregoing reasons, there is a genuine issue of material fact here and ECISD's Motion for Summary Judgment must be denied.

## VIII.
## ECISD WAS DELIBERATELY INDIFFERENT

Plaintiff incorporates all arguments made above herein as it ties into deliberate indifference. As seen above, Edinburg CISD had actual notice of similar complaints made against Badillo prior to Jane Doe's assault and from that complaint, Edinburg CISD knew there was discrimination it its programs. Edinburg CISD also had actual notice from prior sexual assaults and sexual harassment by other teachers through the years. If a teacher is approaching a child about her nude photographs and telling that child that she looks nice, then that teacher is certainly going to sexually abuse a child. In receiving these complaints, Defendant was required to take corrective action immediately rather than sit idly by while students of its school repeatedly suffered sexual harassment and discrimination by Badillo. Defendant argues that it was not deliberately indifferent to complaints of sexual harassment, particularly E.M.'s complaint, because it was "undeniably investigated and addressed by the Edinburg CISD Police Department."[212] However, several courts and the U.S. Department of Education have made it clear that the *school has to conduct its own independent investigation*. *See* Exhibit I, OCR Dear Colleague Letter, pp. 4-5. **("…the school's Title IX investigation is different from any law enforcement investigation, and a <u>law enforcement investigation does not relieve the school of its independent Title IX obligation to investigate the conduct</u>…the school's inquiry must in all cases be…thorough…")**. The School cannot simply pass it off to a police department or governmental agency. *Id.* This statement in Defendant's Motion additionally shows the glaring and obvious inadequacies and deficiencies in Title IX training at Edinburg CISD.

At least one federal court has found that a school failed to appropriately respond to a complaint of sexual harassment when it improperly relied on a police investigation and did not

---

[212] *See* Defendant's Motion for Summary Judgment, ¶ 23 (Dkt. No. 44).

conduct its own investigation. *See Doe v. Forest Hills*, 2015 U.S. Dist. LEXIS 175321, at *9-11 (W.D. Mich. Mar. 31, 2015.)  To accept the Defendant's argument, that a school district may "punt" its obligations to properly respond to complaints of sexual harassment, or "piggyback" on police investigations and findings, would eviscerate Title IX. While that may fulfill mandated reporting duties, it does not fulfill a school's distinct responsibilities under Title IX. Also, the Edinburg CISD police department undeniably has inherent bias towards the school. The School should have reported E.M.'s complaint to other law enforcement such as the Edinburg Police Department but did not do so.  The School should have reported the incident to CPS but did not do so. The School should have conducted its *own* investigation into the complaint but did not do so. This all means that Defendant, by not conducting its *own* investigation or making its *own* independent findings regarding Badillo's sexual harassment against students, and instead adopting Edinburg CISD PD findings as its own, failed to meet its Title IX obligations, and was deliberately indifferent to the endless sexual harassment that Jane Doe suffered.

Regardless, the Edinburg CISD police department did not fully investigate the incident because clearly, per E.M.'s testimony, no remedial action was taken and E.M. and her parents were never made aware of any outcome or consequences following her complaint.[213] Further, the only reason there is any kind of police report at all is because E.M., the student, was the one to approach the officer.[214] Not any administrator or teacher. The School is trying to deceptively mislead this Court into believing the School took "all necessary action" because there is a police report. Well, no administrator at the School made the police aware.[215] The child did. And for the record, the only reason Jane Doe's sexual assault even got any attention at all by the school is because Jane

---

[213] *See* E.M. Dep. 71: 1-3.
[214] *See* Exhibit L.
[215] *See* Exhibit L.

Doe's friend, G.M., a student, reported it to Edinburg CISD police.[216] Again, the responsibilities were left up to a child when really the school should have been proactive pursuant to prevailing case law and statutes.

The School relies heavily on *Gonzales v. Ysleta Independent School Dist,* 996 F.2d 745 (1993) to prove its point. However, that case is entirely distinguishable. In *Gonzales,* the School mounted some type of reaction upon notice of the student's complaint by reprimanding the teacher Mares in writing, ordering him to enter a "general improvement program" and transferring him to another school. *Id.* at 747-749. Here, the incident that most immediately preceded the one with Jane Doe was E.M.'s incident, which the School learned of and **did nothing about**. No official reprimand in writing. No improvement program ordered. No transfer. No alert to the student body. No suspension. No firing. E.M. told the School that Badillo made her feel very uncomfortable and that he was stalking her and asking about **nude photographs**. Defendant Edinburg CISD did not take any type of action like the School did in *Gonzalez.*

Here, *taking the facts in the light most favorable to Plaintiff*, as this Court must do, the School's reaction or lack thereof amounted to deliberate indifference.

Even if this Court decides that E.M's complaint was not sufficient for notice, then Plaintiff would show that even after Edinburg CISD became aware of Jane Doe's assault in May 25, 2017, Jane Doe testified that **Badillo still remained on campus**.[217] Even more egregiously, ***Edinburg CISD still did not terminate Badillo***.[218] ***He was allowed to resign***.[219] ***In a self-serving letter to Mr. Badillo, Edinburg CISD superintendent Rene Gutierrez said that Mr. Badillo's service to***

---

[216] *See* Jane Doe Dep. 82:25-83:2.
[217] *Id.* at 87: 4-8.
[218] *See* Exhibit F.
[219] *Id.*

41

***Edinburg CISD has been "appreciated"***.[220] In Mr. Badillo's resignation letter, he stated that after his discussion with Rene Salinas, Director of Personnel at Edinburg CISD, it was in "***the best interest of Edinburg CISD"*** for him to resign and the reason for resignation was due to "***personal reasons***".[221] That is insanity and frankly a testament to Edinburg CISD's hush hush culture. Edinburg CISD wanted Badillo to resign so the School would not look bad. Ms. Culbertson admitted in her deposition there should be a policy in order to prevent resignation amidst allegations and resignations presented a huge problem.[222] Despite several incidents of sexual assault and sexual harassment at ECISD, and despite the fact that at least one of those incidents involved a complaint that Badillo was pulling a minor child out of class and getting her alone with no accountability or supervision to discuss nude photographs of said minor student, ECISD:

1. Made no changes to policy, even though previous incidents of sexual assault and sexual harassment by teachers of students demonstrated that ECISD's policies inadequately protected children;

2. Had no policy requiring training in the detection of sexual abuse;

3. Had no policy prohibiting teachers and staff from being left alone with children for long periods of time;

4. Had no policy requiring the tracking of children's whereabouts during the school day;

5. Had no policy prohibiting a child from being removed from class without a legitimate, approved purpose;

6. Still has not reviewed its policies to ensure they are sufficient to prevent the type of occurrence with Badillo that has now happened at least one previous time; and

---

[220] *Id.*
[221] *Id.*
[222] *See* Culbertson Dep. 36: 1-8; 86: 14-87: 10.

7.   Still has no written policy requiring training in the *detection* of sexual abuse in children.

Jane Doe testified that the School could have done more to protect her.[223] Therefore, because Defendant Edinburg CISD was deliberately indifferent, this Court should deny Defendant's Motion.

## IX.
## PUNITIVE DAMAGES ARE RECOVERABLE UNDER TITLE IX

Contrary to Defendant's misleading argument, punitive damages are recoverable under Title IX. Firstly, the case to which Defendant cites, *Barnes v. Gorman,* is not even a Title IX case[224]. Defendant even concedes that *Barnes* is not a Title IX case.[225] "Whether punitive damages are recoverable under Title IX depends on whether the institution acted 'with malice or reckless indifference to the federally protected rights of [the plaintiff.]'" *Kolstad v. American Dental Ass'n.*, 527 U.S. 526, 534, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999) (referring to Title VII case); *Loch v. Board of Edu. of Edwardsville Community School Dist.* No. 7, 573 F. Supp. 2d 1072, 2008 U.S. Dist. LEXIS 54129, 2008 WL 2782844, *12 (S.D. Ill. July 15, 2008) ("As the Seventh Circuit has indicated, 'federal courts look to cases decided under Title VII to inform analysis under Title IX.'").

In *Franklin*, the Court confronted the issue of whether Title IX supports a claim for monetary damages. *Id* at 62. In holding that monetary damages were indeed available in Title IX cases, the Court stated that:

> the general rule, therefore, is that absent clear direction to the contrary by Congress, ***the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute.***

**Any appropriate relief includes punitive damages as courts have held:**

---

[223] *See* Jane Dep. 114: 15-18.
[224] 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002).
[225] *See* Defendant's Motion for Summary Judgment, ¶ 32.

Although *Franklin* did not address specifically the availability of punitive damages under Title IX, there is no adequate basis, in the *Franklin* opinion or elsewhere, for exempting punitive damages from the full spectrum of remedies generally available for violation of a federal statute such as Title IX or the Rehabilitation Act. First, punitive damages doctrine has been accepted as 'settled law by nearly all state and federal courts, including [the Supreme Court] for more than a century.'

*Smith v. Wade*, 461 U.S. 30, 35, 75 L. Ed. 2d 632, 103 S. Ct. 1625 (1983).

Moreover, a majority of the Supreme Court has already rejected the proposition that Congress "acted expressly when it intended to approve punitive damages." *Id*. at 37 n.5. Finally, the "appropriateness" of punitive damages depends on the intent of the defendant in each case, a determination that "**rests in the discretion of the . . . trier of fact**." 22 Am. Jur. 2d § 739 (emphasis added).

As demonstrated above, punitive damages are recoverable under Title IX or at the very least it is a question of fact that should be left to the jury to decide.

## X.
## PUNITITIVE DAMAGES ARE RECOVERABLE UNDER § 1983

Punitive damages are recoverable under §1983. The Supreme Court has held the same, stating:

> "the United States Supreme Court has decided *Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L.Ed.2d 632 (1983), wherein the Court held punitive damages *are* recoverable under §1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *See Smith*, 461 U.S. at 56, 103 S.Ct. at 1640.

*Simmons v. City of Mamou*, 2009 U.S. Dist. LEXIS 95412 at *9-10 (W.D. La. 2009).

Public policy for deterrence is another driving force behind punitive damages for Section 1983 claims as Courts have held:

> The availability of punitive damages is central to the goal of deterrence inherent in § 1983 cases. *Zarcone v. Perry*, 572 F.2d 52 (2nd Cir.1978). While the Fifth Circuit has not ruled directly on this issue, other courts have held that punitive damages may be awarded in

§1983 suits in federal courts even where they are not available under state law. *Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir.1986).

*Thomas v. Frederick*, 766 F. Supp. 540, 561 (W.D. La. 1991)

For the foregoing reasons, punitive damages are recoverable under Section 1983.

## XI.
## CONCLUSION

As this Court has remarked previously with regards to this case, "**something happened here that was not a good thing**." Plaintiff agrees. It is almost incomprehensible that a 35-year-old teacher could, at his whim, take a child from class, and take that child to an isolated room – his wife's classroom for that matter – on campus and do whatever he wanted with the child, for as long as he wanted. It is unfathomable that it happened repeatedly. It is frankly, unbelievable, that no one at the school, including the child's teachers, would question the whereabouts of the child, and no one would even notice that the child would not return to class for extended periods of time or **never return to class at all**. It borders on criminal that such an occurrence has now happened several times, ruining the life of Jane Doe and countless other victims, and giving rise to a lawsuit. What is more damning is that ECISD never made changes to its policies even though it knew incidents of sexual assault by staff members like Jane Doe's occurred at their schools previously and across the state and the nation every day.

It is almost incomprehensible that Edinburg CISD would retain Badillo as an employee on campus even after having notice of a criminal complaint of sexual harassment by a different child on April 11, 2017. Edinburg CISD knew discrimination existed in its programs and yet took no action, resulting in Badillo sexually assaulting Jane Doe. Edinburg CISD was deliberately indifferent to Jane Doe's assault and harassment.

Based on the facts of this case, Plaintiff would submit that there exists sufficient evidence to create a genuine issue of material fact on whether ECISD, through the District's policies and lack of policies, was deliberately indifferent to the rights of Jane Doe. Plaintiff has sound Title IX and §1983 claims against Defendant ECISD. Accordingly, Defendant ECISD's Motion for Summary Judgment must be denied.

Respectfully submitted,

THE BUZBEE LAW FIRM

By: */s/ Cornelia Brandfield-Harvey*
Anthony G. Buzbee
Attorney-In-Charge
State Bar No. 24001820
Federal Bar No. 22679
tbuzbee@txattorneys.com
Cornelia Brandfield-Harvey
State Bar No. 24103540
Federal Bar No. 3323190
cbrandfieldharvey@txattorneys.com
JP Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Phone: 713-223-5393
Fax: 713-223-5392
www.txattorneys.com

Aaron I. Vela
LAW OFFICE OF AARON I. VELA, P.C.
200 East Cano
Edinburg, Texas 78539
(956) 381-4440 – Telephone
(956) 381-4445 – Facsimile
aaron@velalaw.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this document has been duly served on all known counsel of record in accordance with the Federal Rules of Civil Procedure on this 19th day of November, 2020 as set forth below:

Eduardo G. Garza
Roman "Dino" Esparza
ESPARZA & GARZA, L.L.P
964 E. Los Ebanos Boulevard
Brownsville, Texas 78520
Via Facsimile (956) 547-7773

*/s/ Cornelia Brandfield-Harvey*
Cornelia Brandfield-Harvey